# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

---

HEATHER SPURLOCK, SOPHIA CARRASCO,
and NINA CARRERA,

      Plaintiffs,

v.                                        No. 9-CV-786 WJ/DJS

ANTHONY TOWNES and BARBARA WAGNER
in their individual capacities, and CORRECTIONS
CORPORATION OF AMERICA,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendant CCA and Barbara Wagner's Motion for Summary Judgment (Doc. 108). Defendant Corrections Corporation of America ("CCA") and Defendant Barbara Wagner (collectively, "Defendants") move for summary judgment on all remaining claims against these Defendants, specifically Counts II through IV of the Second Amended Complaint (Doc. 103). A hearing was held on this motion on January 5, 2011 (Doc. 127). Having considered the parties' arguments and the applicable law, the Court hereby denies in part and grants in part Defendants' Motion.

## BACKGROUND

From January to August of 2007, Plaintiffs Heather Spurlock, Sophia Carrasco and Nina Carrera were serving criminal sentences at the Camino Nuevo Correctional Center ("Camino Nuevo") in New Mexico. CCA, a private contractor, operated Camino Nuevo during this period pursuant to a contract with the New Mexico Corrections Department. At all relevant times,

Defendant Barbara Wagner was the warden of Camino Nuevo. Defendant Anthony Townes worked at Camino Nuevo supervising minimum security female inmates until he was placed on administrative leave on August 17, 2007. In October 2007, a grand jury indicted Townes in New Mexico state court for the unlawful seizure and rape of four female inmates, including the above-named Plaintiffs. In September 2009, Townes pled guilty to four counts of criminal sexual penetration by one in a position of authority, and was sentenced to 18 years in prison. Now, Plaintiffs are suing the three Defendants based on these same incidents, seeking compensatory and punitive damages.

## I.    Procedural History

The Court has granted partial summary judgment on Plaintiffs' claims as to Defendant Townes, to the extent that he is estopped from denying facts in this litigation which he admitted in his guilty plea in the criminal case. *See* Doc. 76. The Court also granted judgment on the pleadings as to Defendants CCA and Wagner, because Plaintiffs' Complaint (Doc. 1) and Amended Complaint (Doc. 17) had asserted state law claims against them under the New Mexico Tort Claims Act, whose two-year statute of limitations barred such claims. *See* Doc. 88. Plaintiffs were permitted to file a Second Amended Complaint, which asserted state law causes of action against all Defendants "as private actors." Doc. 103 at 9. Plaintiffs therefore have two causes of action remaining in this case against Defendants CCA and Wagner: violation of the Eighth Amendment (Count II); and "negligent training, supervision, retention and managment [sic] claims" arising under state law (Count IV). Plaintiffs have stated one cause of action against Defendant CCA but not Defendant Wagner: state law intentional torts (Count III).[1]

_____

[1] From the wording of the complaint, it is not entirely clear whether Defendant Wagner is meant to be included in Count III. Plaintiffs' counsel, however, clarified at the January 5 hearing

Defendants move for summary judgment on all claims, arguing that the evidence is insufficient to support Plaintiffs' claims.

## II.      Disputed Material Facts

Plaintiffs argue that there are disputes of material fact with regard to whether Defendants abdicated their duty to protect inmates in Camino Nuevo by instigating policies of obedience, submission, and silence. Specifically, Plaintiffs claim that as inmates at Camino Nuevo they were required to follow all orders given by the prison guards, including unlawful and/or dangerous orders. Plaintiffs contend that Defendants actively discouraged inmates from making complaints concerning staff misconduct, systematically downplayed and refused to investigate the inmate complaints that were made against staff members such as Townes, and retaliated against Plaintiffs for making complaints about Townes' misconduct. Further, Plaintiffs allege that Defendants' training policies and procedures were defective because they allowed prison guards to take advantage of vulnerable inmates at the facility.

Defendants argue that many of Plaintiffs' contentions are founded on inadmissible evidence, and that Plaintiffs misrepresent the admissible evidence and testimony. They maintain that the policies and procedures in place at Camino Nuevo were constitutional, and that there is no evidence showing that Defendants were deliberately indifferent to Plaintiffs' rights or physical safety. They conclude that they cannot be held responsible for Townes' conduct.

The majority of the parties' disputes do not relate to material facts. For example, Plaintiffs allege that the facility was understaffed, and the parties argue about who was responsible for the placement of the surveillance cameras in the facility. Pls.' Resp. at 3-5 (Doc.

that Plaintiffs did not intend to name her in this count.

118). Plaintiffs also place much emphasis on the contract between the New Mexico Department of Corrections and Defendant CCA. This dispute would be relevant to a breach of contract action between Defendant CCA and the Corrections Department, but is not material to this case. Similarly, whether or not the allegations against Townes were reported to the Corrections Department is immaterial when outside law enforcement was investigating the case. For the sake of efficiency, the Court will hereafter omit references to any of Plaintiffs' "disputes" which do not raise a material issue of fact.

## LEGAL STANDARD

Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; it may not rest on mere allegations or denials in its own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252.

"All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted." D.N.M.LR-Civ. 56.1(b). "[S]ufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d

4

1022, 1024 (10th Cir. 1992). "[T]he nonmovant must do more than refer to allegations of

counsel contained in a brief." *Id.* "To defeat a motion for summary judgment, evidence,

including testimony, must be based on more than mere speculation, conjecture, or surmise.

Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Self*

*v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (citation omitted) (internal quotation marks

omitted).

## DISCUSSION[2]

### I.      Section 1983

Prison inmates have a constitutional right to be free from cruel or unusual punishment.

*See* U.S. Const. amend. VIII. Congress has provided a private cause of action against state actors

for the violation of constitutional rights. *See* 42 U.S.C. § 1983. A plaintiff suing under § 1983

must establish "(1) that the plaintiff was deprived of a federal right; and (2) that the person who

deprived him [of that right] acted under color of state law." *Choate v. Lemmings*, 294 F. App'x

386, 392 (10th Cir. 2008). Defendants do not dispute either of these prongs; rather they premise

their motion on the proposition that they are not the main tortfeasors in this action, and as such,

their liability is dependent on an additional showing of responsibility that Plaintiffs have not

---

[2] To the extent that Plaintiffs rely on arguments previously rejected by the Court, such arguments are not considered in this Memorandum Opinion. For example, Plaintiffs argue for respondeat superior liability for Defendants under § 1983, but not only is this in direct contravention of a well established line of cases in the Tenth Circuit, *see, e.g.*, *Dubbs v. Head Start*, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003), the Court has already rejected this *exact* argument, *see* Doc. 76 at 12-13. Additionally, as Defendants point out, Plaintiffs' "argu[ment] that § 33-1-17(D), CCA's contract with NMCD, and CCA's maintenance of liability insurance somehow compel the conclusion that Anthony Townes was acting in the course and scope of his employment" has already been "flatly rejected" by the Court. Defs.' Reply at 13 (Doc. 122); *see* Doc. 76 at 16. Such arguments will not be reconsidered here, and Plaintiffs' recourse is to seek appropriate review at the appellate level.

made.

Plaintiffs assert that municipal[3] liability applies in this case because Defendants operated Camino Nuevo pursuant to a custom or policy that violated Plaintiffs' rights. "To be liable, the municipality must have had an 'official municipal policy of some nature' that was the 'direct cause' or 'moving force' behind the constitutional violations." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1215 (10th Cir. 2003) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Causation presents a threshold question: "our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Plaintiffs argue that the manner in which the official policies were carried out—that is, the customs at the facility—was constitutionally defective. Plaintiffs are correct that unwritten customs, even those which differ from the established official policies, may be sufficient to render an entity liable under § 1983. The Supreme Court has rejected the proposition that an entity may "use legal forms to hide the function of its true policies." *Milligan-Hitt v. Bd. of Trs.*, 523 F.3d 1219, 1225 (10th Cir. 2008) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989); and *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)); *see also Monell*, 436 U.S. at 690 ("[A]lthough the touchstone of the § 1983 action . . . is an allegation that official policy is responsible for a deprivation of rights . . . [entities] may be sued for constitutional deprivations visited pursuant to . . . 'custom' even though such a custom has not received formal approval

---

[3] The Court will use the term "municipal" liability to refer to Defendant CCA's liability in this case, as it has already determined that private corporations are entitled to the protections of municipalities under § 1983. *See supra* note 2.

through the body's official decisionmaking channels.").

The Eighth Amendment standard for holding an entity or official responsible for the conditions which permitted a violation of inmates' safety and bodily integrity is deliberate indifference. *Berry v. City of Muskogee*, 900 F.2d 1489, 1494-95 (10th Cir. 1990). "[A]n official or municipality acts with deliberate indifference if its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Id.* at 1496. Deliberate indifference may be found "when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Carr v. Bowen*, 337 F.3d 1221, 1229 (10th Cir. 2003). Even where Plaintiffs do not allege "a pattern of unconstitutional behavior," deliberate indifference may still be found "if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Id.* Deliberate indifference is a question of fact, not law. *DeSpain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Plaintiffs attempt to establish deliberate indifference as a matter of law by essentially bypassing the "deliberate indifference" standard altogether. They argue that they can rely on the widespread awareness of prison rape as a general problem in the country in order to establish Defendants' "constructive knowledge" of the problem of prison rape at this particular prison. Pls.' Resp. at 18-19 (Doc. 118). This argument fails. Plaintiffs must assert facts showing that Defendant CCA was on notice of misconduct by its employees at this particular facility, *not* that Defendant CCA was aware that "at least 13 percent of the inmates in the United States have been sexually assaulted in prison," *id.* at 18 (quoting Prison Rape Elimination Act § 2(2), Pub. L. 108-79, 117 Stat. 972 (2003)), or that "the elimination of prison rape is a top priority for all

7

prison systems in the United States," *id.* (citing Prison Rape Elimination Act § 3(2)). The cases cited by Plaintiffs do not support the proposition that the legal standard regarding specific notice about problems at Camino Nuevo can be satisfied with the generalized type of notice about problems in American prisons that their brief discusses. As Defendants point out, "Plaintiffs' PREA theory is essentially a strict liability theory." Defs.' Reply at 10 (Doc. 122). If adopted, this theory would completely circumvent any need to show deliberate indifference or knowledge on the part of Defendants. The law requires a showing of knowledge more specific than this.

This is illustrative of the problems pervasive throughout Plaintiffs' argument. Plaintiffs, for the most part, assert disputes of fact without analyzing whether these disputes rise to the level of deliberate indifference. Plaintiffs must show, for each purported issue of factual dispute, that the evidence is sufficient to permit a reasonable jury to infer that Defendants operated Camino Nuevo pursuant to a custom or policy that amounted to deliberate indifference of Plaintiffs' constitutional rights to physical safety and bodily integrity. Plaintiffs identify the following customs or policies allegedly practiced by Defendants that are constitutionally infirm: (1) express discouragement of the reporting of staff misconduct; (2) the failure to seriously or substantively investigate inmate allegations; and (3) a requirement that inmates comply with even unlawful or dangerous orders. Pls.' Resp. at 17 (Doc. 118). The Court agrees that Plaintiffs have raised a dispute of material fact on the first of these issues which is sufficient to preclude summary judgment for Defendants on Plaintiffs' Eighth Amendment claim.

### 1.     Unlawful and/or Dangerous Orders

Plaintiffs claim that policies at Camino Nuevo required inmates to obey all orders given by guards, even those that are unlawful or dangerous. *See* Pls.' Fact 22 (Doc. 118 at 12) (citing Pls.' Ex. C, at 79:23-80:7; and Pls.' Ex. B, at 23:12-16). Plaintiffs' contentions rest on the

testimony of Townes and Security Chief Jeffrey Francis in their respective depositions. This

evidence, however, does not support their allegation, and, moreover, this issue is not material to

the necessary showing of deliberate indifference.

Security Chief Jeffrey Francis, during his deposition, gave his opinion that an inmate

should obey a guard's order to accompany the guard to an out-of-the-way or poorly lit area,

despite the knowledge that such an area would present an increased risk of sexual assault.

> Q It [a CCA inmate handbook] advises the inmates to avoid being the victim of
> sexual abuse or assault among other things. It says: Avoid out-of-the-way or
> poorly lit areas. Do you agree with that advice?
> A Sure. Yes.
> Q Now so what's the inmate – a female inmate supposed to do if she's told to go
> to an out-of-the-way or poorly – and/or poorly lit area by male staff members or
> guard? What is she supposed to do?
> A Go.

Pls.' Ex. C, Jeffrey Francis Dep. at 79:23-80:1-7 (Doc. 118-3). Francis, however, was not

employed at Camino Nuevo until after the rapes occurred. *See id.* at 11:18-20. Francis did not

testify that Camino Nuevo operated pursuant to a longstanding policy or custom of requiring

inmates to obey dangerous orders. His testimony lacks any context to infer that he has personal

knowledge of policies at Camino Nuevo before he was employed there.

Townes testified during his deposition that he would not refuse to obey the orders of

guards while incarcerated himself. Pls.' Ex. B, Anthony Townes Dep. at 23:12-16 (Doc. 118-2).

This, too, is irrelevant because it does not pertain to policies in place at Camino Nuevo during

the relevant time period. Townes does not discuss whether inmates were required to obey

unlawful and dangerous orders during the time he was employed at Camino Nuevo. His

testimony does not even support an inference that policies at the prison where he is incarcerated

now require inmates to follow unlawful and/or dangerous orders, much less the inference that

there was such a policy at Camino Nuevo during the time he was employed there.

Furthermore, a prison cannot have a situation where prisoners do not have to obey orders from prison guards. The claim that inmates are constitutionally entitled to pick and choose which orders to obey from prison guards is a catch-22 situation for prison administrators. Prison is an inherently coercive environment, and maintaining order and discipline among the inmates is a particularly important interest on the part of prison officials. Accordingly, "great deference must be accorded to the administrative determinations of prison officials." *Frazier v. Dubois*, 222 F.2d 560, 562 (10th Cir. 1990) (quoting *Turner v. Safley*, 482 U.S. 78, 81, 85 (1987)). Prison rules and policies are constitutionally valid if they are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Plaintiffs have therefore not established that any policy requiring inmates to obey all orders is material to their claim of deliberate indifference, and Defendants are entitled to summary judgment on this issue.

### 2. Retaliation

Plaintiffs claim that they were transferred to another prison, and that Plaintiff Carrasco was forced to walk through a double-line of guards while the facility was in lockdown, as retaliation for making complaints against Townes.[4] Plaintiffs' arguments are, however, not supported by the record. Plaintiffs admit they were transferred from Camino Nuevo before they reported their allegations of rape against Townes. "Spurlock and Carrasco were transferred from [Camino Nuevo] to another CCA-operated prison on August 6, 2007, and June 26, 2007, respectively." Pls.' Fact 2 (Doc. 118 at 3). Allegations were first made against Townes on August 14, 2007. Defs.' Fact 17 (Doc. 108 at 7); Pls.' Fact 17 (Doc. 118 at 10). This undisputed

---

[4] Plaintiffs base this argument on the transfers of Plaintiffs Spurlock and Carrasco, and the Court finds no retaliation claim raised on behalf of Plaintiff Carrera in the briefs.

time line shows clearly that Plaintiffs have not alleged facts sufficient to state a claim of retaliation. Therefore, it is immaterial whether Defendant Wagner or the New Mexico Department of Corrections initiated the transfers. Either way, it could not have been a retaliatory act for a complaint that had not yet been made.

Plaintiff Carrasco also testified that she was forced to walk past a double line of guards while the facility was in lockdown. Plaintiffs characterize this as "highly suggestive" of retaliation and punishment for filing a complaint against Townes. Pls.' Fact 2 (Doc. 118 at 4). This characterization, however, is not supported by the actual testimony. There are no allegations that this type of behavior is an inappropriate response to security concerns during a lockdown situation. There is no evidence that the guards said or did anything to intimidate Plaintiff Carrasco while she was walking past them. Rather, Plaintiff Carrasco characterizes the behavior as "guarding" and "just kind of shielding." Pls.' Ex. E, Sophia Carrasco Dep. at 91:6-7, 10-12 (Doc. 118-5). Argument of counsel cannot establish a dispute of fact when Plaintiff Carrasco's own testimony does not support this argument. Therefore, there is nothing about this allegation that is "highly suggestive" of retaliation or punishment. Defendants are entitled to summary judgment on the issue of retaliation.

### 3.     Indifference to Inmate Complaints

Plaintiffs argue that Defendants displayed indifference to inmate complaints regarding staff misconduct, and that Defendants failed to take Plaintiffs' allegations against Townes seriously. Plaintiffs claim that Defendants did nothing to follow up on the complaints once outside law enforcement was contacted, and that the evidence shows that Defendant Wagner and Security Chief Jeffrey Francis are unaware of the history of Townes' case. Plaintiffs have failed to create a genuine dispute of material fact on this issue, and to the extent that they have, the

dispute is not material to the claim of deliberate indifference.

Defendant Wagner's affidavit establishes that Defendants took immediate and effective action once they were notified of the complaint against Townes. She testifies that when she first became aware of the allegations against Townes, he was on paid time off. Defs.' Ex. 1, Wager Aff. ¶ 16 (Doc. 108-1). When Townes returned to the facility, he was required to surrender his identification badge, was escorted off the facility grounds, and was placed on administrative leave. *Id.* ¶ 17. Townes had no contact with inmates after the allegations were raised against him. *Id.* The Bernalillo County Sheriff's Department and the New Mexico Corrections Department were immediately informed of the allegations. *Id.* ¶¶ 16-17.

Even if Plaintiffs could show that Defendants did nothing further after referring the matter to outside law enforcement, that inaction does not equate to a general indifference to the complaints. Turning over relevant evidence and cooperating with the investigation[5] must be sufficient to discharge Defendants' duty to protect inmates, in order to avoid imposing the full range of duties of law enforcement officers on private prison operators. Plaintiffs' accusations are irrelevant where the matter was being competently handled by outside law enforcement and Townes was no longer an employee of CCA. Plaintiffs dispute that the complaint against Townes was timely reported to the New Mexico Department of Corrections, but that fact standing on its own does not show that Defendants were lax in their duty to ensure that Plaintiffs' complaints received sufficient attention from state law enforcement. These disputes,

---

[5] Plaintiffs' inflammatory accusation that Defendant Wagner "knowingly allowed valuable evidence to be destroyed" is unsupported by the citation to the record accompanying that accusation, where the record simply indicates that Defendant Wagner turned over all relevant evidence to the sheriff's department after informing them of the allegations against Townes. *See* Pls.' Fact 18 (Doc. 118 at 10) (citing Pls.' Ex. A, at 88:14-90:16).

therefore, do not concern material facts sufficient to survive summary judgment.

**4.      Training**

Plaintiffs generally do not dispute Defendants' description of the training prison guards

receive at Camino Nuevo, which includes

> topics such as the Code of Conduct, CCA's zero tolerance policy for sexual
> misconduct, the Prison Rape Elimination Act (including the purpose of the act,
> definitions of sexual misconduct, the effect of sexual misconduct, preventing staff
> sexual misconduct, and penalties for sexual misconduct), and NMCD and CCA's
> policies and procedures.

Defs.' Fact 7 (Doc. 108 at 4); Pls.' Fact 7 (Doc. 118 at 5);[6] *see also* Defs.' Ex. 6, Anthony

Townes Dep. at 50:24-52:20 (Doc. 108-1). Insofar as Plaintiffs do attempt to dispute

Defendants' evidence, their attempts are unpersuasive.

Townes, when discussing the training he received at Camino Nuevo, describes it as

"basic general training overall" and cites "nothing special" about it. Pls.' Ex. B, Anthony

Townes Dep. at 9:4-12 (Doc. 118-2). But there is no tension between Defendants' descriptions

of the training programs at the facility and Townes' own characterization of his training

experience. Townes' testimony does not specifically controvert any claim of Defendants related

to the training policies and procedures. Furthermore, Townes merely states an opinion, rather

than actual fact.

---

[6] Plaintiffs object to the use of Defendant Wagner's affidavit on the basis of Rule 56,
which states: "If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy
must be attached to or served with the affidavit." Fed. R. Civ. P. 56(e)(1). The objection,
however, is unaccompanied by any argument regarding specifically which "papers" Defendant
Wagner refers to that ought to have been attached, or which portions of the affidavit the Court
ought to disregard. The Court further notes that, even if it were to strike paragraphs of the
affidavit which reference specific CCA written policies, *e.g.*, Wagner Aff. ¶ 10 (Doc. 108-1 at
4), the rest of the affidavit would still be competent evidence to establish material facts
concerning the content of the general policies followed at Camino Nuevo and the training
programs there, based on the warden's personal knowledge.

Plaintiffs' disputes also concern whether a "training course on the visual limits of the surveillance system" exists at Camino Nuevo. Pls.' Fact 7 (Doc. 118 at 5). This does not really pertain to the matter of whether the comprehensive training policies that Defendants assert were in place at Camino Nuevo are constitutional. Therefore, the facts in Defendants' brief regarding the official training procedures and policies at Camino Nuevo are deemed to be admitted, and Defendants are entitled to summary judgment on this claim.

5.       **Discouraging Inmate Complaints**

Plaintiffs allege that Defendants deliberately took steps to discourage inmates from filing complaints or grievances against staff members. Unlike the rest of their factual disputes, with respect to this issue Plaintiffs have raised a genuine dispute of material fact as to Defendants' deliberate indifference. The testimony of Plaintiff Spurlock in her affidavit establishes that Warden Wagner told inmates at Camino Nuevo not to file grievances concerning staff misconduct, and that inmates would "lose" if they made such complaints. Plaintiffs' case on this issue, for the reasons explained below, is fairly weak, but they manage to survive summary judgment.

First, the Court notes that Plaintiffs do not dispute that Defendants had a grievance system in place for reporting staff misconduct, with many different avenues available to inmates for reporting staff misconduct. Defs.' Fact 21 (Doc. 108 at 8); Pls.' Fact 21 (Doc. 118 at 11). Plaintiffs attempt to discard the grievance system as "irrelevant," but on the contrary, it is relevant to whether inmates had the means to file complaints against the staff.

Plaintiffs nonetheless argue that the grievance system is insufficient to protect inmates' constitutional rights, because Defendants expressly discouraged inmates from filing grievances. However, most of the evidence on which Plaintiffs' allegations are based is conclusory,

14

unsupported, and altogether vague. For instance, the excerpt of Plaintiff Spurlock's deposition

does not describe any incidents with any degree of specificity:

> Q. Why did you think that if you reported being raped, you would get in trouble?
> A. Because if we reported anything at Camino, anything, if we complained about
> anything, it was discredited, it was not believed, or it was ignored.

Pls.' Ex. D, Heather Spurlock Jackson Dep. at 49:10-14 (Doc. 118-4). This conveys Plaintiff

Spurlock's opinion of what might happen if she reported an incident, rather than a concrete

allegation of an instance of active discouragement of reporting staff misconduct.

Plaintiff Carrasco similarly fails to specifically allege in her deposition that Defendant

Wagner discouraged the inmates from bringing complaints of staff misconduct. Further, she is

unable to identify any instances of retaliation against inmates for bringing complaints, or any

victims of this practice:

> Q. So you told the warden things, and she wouldn't listen to you?
> A. No, I never told the warden. She — whatever we said in the prison didn't
> matter, we were — we had no rights when we were in there.
> Q. Okay. So what I'm trying to find out is why you believe that's true. Can you
> give me an example of something that somebody said to the warden that you feel
> the warden didn't act upon or didn't believe?
> A. When she would hold her town house meetings is what —
> Q. The town hall meetings?
> A. Yes. She — she didn't care anything about what we had to say.
> Q. What —
> A. We were just inmates.
> Q. Okay. And that's what I'm trying to find out, is why do you believe that. What
> was she saying or doing that was causing you to believe that she didn't care about
> what you — what the inmates were saying?
> A. I can't remember. I can't remember a lot of things she did say, but it was just
> — she had control, and we couldn't do nothing. We couldn't say nothing.
> Q. Did she — did she punish people for saying something?
> A. Yes, sir.
> Q. Who — who had she punished for reporting something?
> A. She would lock them in their — their rooms. She would lock them in their
> rooms and stuff.
> Q. Okay. Can you give me an example of somebody who reported something to
> the warden and the warden locked her in her cell?

> A. I don't — I don't remember what they had reported.
> Q. Well, can you tell me who?
> A. I don't remember their names.

Pls.' Ex. E, Sophia Carrasco Dep. at 65:9-66:22 (Doc. 118-5). General opinions and feelings

concerning unconstitutional behavior are not sufficient to survive summary judgment. These

conclusory statements in Plaintiffs' depositions simply do not create a genuine dispute of

material fact.

Nonetheless, Plaintiffs have presented some evidence of conduct on Defendants' part that

would amount to deliberate indifference. Plaintiff Spurlock, in an affidavit, describes statements

made by Defendant Wagner at a "town hall" meeting which Plaintiff took to indicate that the

inmates would always "lose" if they submitted complaints against prison staff members. *See*

Pls.' Fact 21 (Doc. 118 at 11). Plaintiff Spurlock's exact testimony is as follows:

> At a town hall meeting in which the subject of filing a complaint against a staff
> member was brought up, Warden Wagner stated that it did not matter what an
> inmate filed, because all of her staff went by the book. We were inmates and they
> were staff, and it would be a "lose-lose" situation for us. The inmates, including
> myself, clearly understood that Warden Wagner was deliberately discouraging us
> from making complaints or filing grievances.

Pls.' Ex. M, Heather Spurlock Aff. ¶ 6 (Doc. 118-13).[7] This testimony is, unfortunately, subject

to multiple interpretations. It is unclear whether the second sentence of paragraph six consists of

Defendant Wagner's purported statement, or simply Plaintiff Spurlock's opinion concerning the

gist of the town hall meeting. If it is simply Plaintiff's opinion, then it is inconsistent with

---

[7] Defendants object to this statement as hearsay, but it would be admissible at trial as an admission of a party opponent. Fed. R. Evid. 801(d)(2). Defendants also object to this affidavit as self-serving and contradicted by the evidence Defendants have presented. All affidavits are inherently self-serving, but they nonetheless constitute evidence in the form of sworn testimony by a party. And although Defendants have presented contradictory evidence, that simply creates a dispute of material fact—the very standard on which summary judgment is granted or denied.

Defendant Wagner's actual words. It appears to the Court that the phrase "by the book," which occurs in the first sentence of paragraph six, is meant to convey that the staff follow the rules, rather than a warning that inmates cannot file complaints without suffering retaliation. Nevertheless, viewed in the light most favorable to Plaintiffs, this is sufficient to constitute an allegation that Defendant Wagner informed inmates at a meeting that filing complaints against staff members would be a "'lose-lose' situation."

Discouraging inmates from filing complaints against staff members could amount to deliberate indifference, and the issue of causation may be reasonably inferred from the record here. The alleged policy or custom—express discouragement of the reporting of staff misconduct—could conceivably enable a staff member, without fear of the consequences, to take advantage of vulnerable inmates who have been led to believe they have no choice but to submit. Plaintiffs have produced enough evidence to allow a reasonable juror to infer that the policy complained of amounted to deliberate indifference, and that it was the "moving force" behind the constitutional violations in question.

This allegation, however, does not necessarily automatically establish a custom or policy sufficient to support municipal liability. Rather, it appears to the Court to be an allegation concerning a single act. Municipal liability can be based on a single action of an official or employee only if the official or employee occupies a "policymaking" position for the entity with respect to the action taken. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *Hollingsworth v. Hill*, 110 F.3d 733, 743 (10th Cir. 1997). Neither party has discussed whether Defendant Wagner is a policymaker for Defendant CCA, so the Court will not address this argument in denying summary judgment.

**II.      State Law**

Plaintiffs have brought two counts asserting violations of state law. First, Plaintiffs raise a variety of intentional torts, including assault, battery, false imprisonment, and intentional infliction of emotional distress, for which they assert Defendant CCA is liable under a respondeat superior theory. Second, Plaintiffs assert claims for negligent training, supervision, retention, and management in connection with Townes' employment against both Defendant Wagner and Defendant CCA. Defendants contend that these claims are barred by a two-year statute of limitations, and even if they are not, Plaintiffs have not put forth sufficient evidence to survive summary judgment.

### A.     New Mexico Tort Claims Act

Defendants assert that, despite the fact that the state law causes of action in the Second Amended Complaint are brought against them "as private actors" (Doc. 103 at 9), those state law claims are nonetheless governed by the New Mexico Tort Claims Act ("NMTCA"). Any tort claim brought against a New Mexico governmental entity or a state employee must be brought pursuant to the NMTCA, which contains a two-year statute of limitations. "Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death . . . ." N.M. Stat. Ann. § 41-4-15 (1978). On the other hand, a three-year statute of limitations applies to standard New Mexico tort law claims. *See id.* § 37-1-8.

The NMTCA defines a "governmental entity" in relevant part as "the state of New Mexico or any of its branches, agencies, departments, boards, instrumentalities or institutions." *Id.* § 41-4-3(B), (H). It defines a "public employee" as "an officer, employee or servant of a governmental entity, excluding independent contractors." *Id.* § 41-4-3(F). Defendants argue that the CCA qualifies as a state instrumentality because it was undertaking a traditional state

function—operating a state prison—pursuant to a contract with the State of New Mexico.

Defendants further argue that, as an employee of CCA, Wagner qualifies as a public employee.

The Court disagrees. In so doing, however, the Court recognizes that no published

opinion from a New Mexico court has addressed this question[8] and that the text of the NMTCA

alone does not provide much guidance. Generally, a state instrumentality is an entity which is so

controlled or intertwined with the State that it can fairly be characterized as a branch of the State.

New Mexico courts have held that corporate bodies such as the New Mexico Finance Authority,

the New Mexico Renewable Energy Transmission Authority, and various public utilities qualify

as state instrumentalities. *See, e.g.*, *Moongate Water Co. v. Doña Ana Mut. Domestic Water*

*Consumers Ass'n*, 194 P.3d 755, 762 (N.M. Ct. App. 2008). On the other hand, New Mexico

courts have been generally reluctant to find that private corporations operating pursuant to

contracts with the State qualify as state instrumentalities. In *Cole v. City of Las Cruces*, the New

Mexico Supreme Court held that the Rio Grande Natural Gas Association did not qualify as a

state instrumentality under the NMTCA, despite the fact that it had entered into an extensive

contract with the State:

> [T]he Association entered into a cooperative services agreement with the City on
> June 21, 1971, which was approved by the New Mexico Public Service
> Commission. The agreement provided that the City was "to solely operate and
> maintain the Association's entire natural gas transmission and distribution
> system." . . . The agreement further provides that "the City shall have the right to
> supervise, direct and control the employees of the Association." But the important
> fact yet remains that the Association is a private corporation and is not the type of

---

[8] The Court notes that an order was issued by a New Mexico district court finding that
CCA employees qualify as "governmental entities and instrumentalities of the state." Defs.' Ex.
12, at 1 (Doc. 108-1). However, "[a]n unpublished opinion is written solely for the benefit of the
parties to the action and has no controlling precedential value." *Eastland Fin. Servs. v. Mendoza*,
43 P.3d 375, 380 (N.M. Ct. App. 2002). More importantly, the order is not accompanied by legal
and factual analysis such as to constitute persuasive authority on the subject.

"instrumentality" contemplated within the context of the Act. There may be situations where a private corporation may be so organized and controlled, and its affairs so conducted, as to make it merely an instrumentality or adjunct of a municipality under the terms of the Act.

657 P.2d 629, 632 (N.M. 1983). In another case, the New Mexico Court of Appeals held that the employees of a private corporation which contracted with the State to provide community mental health programs did not qualify as "public employees" under the Act. *Armijo v. Dep't of Health & Env't*, 775 P.2d 1333, 1337 (N.M. Ct. App. 1989). In so holding, the court noted that the contract did not give the State the right to control the details of the work of the private corporation. *Id.* Both these cases suggest that New Mexico courts would not characterize CCA as a state instrumentality, nor would they describe CCA employees as public employees.

Furthermore, a published case from the District of New Mexico has held that a private corrections officer such as Townes does not qualify as a public employee under the New Mexico Tort Claims Act. In *Giron v. Corrections Corporation of America*, a prisoner sued a corrections officer (who happened to be employed by Defendant CCA) for various intentional torts, alleging that the officer raped her while she was imprisoned. 14 F. Supp. 2d 1245 (D.N.M. 1998). After concluding that the officer was acting under color of state law for § 1983 purposes, the court held that the officer was not a public employee under the NMTCA. *Id.* at 1252. The court reasoned that the private corporation that employed the officer was operating the state prison as an independent contractor, rather than a mere instrumentality of the State. Because the corrections officer was an employee of an independent contractor, rather than the employee of a state entity, he could not qualify as a "public employee."[9]

---

[9] Defendants point out that the Tort Claims Act's reference to independent contractors applies only to the employees of the private prison operator, not the prison operating company itself. Defendants are correct, but their argument is beside the point. A private prison operator

In addition, the court drew support from the provisions in the New Mexico code governing the employees of private prison operators: "When the contractor begins operation of a facility for which private contractor operation is authorized, his employees performing the functions of correctional officers shall be deemed correctional officers for the purposes of Sections 33-1-10 and 33-1-11 NMSA 1978 *but for no other purpose of state law*, unless specifically stated." N.M. Stat. Ann. § 33-1-17(E) (emphasis added). Because neither of those sections confer immunity for tort liability on correctional officers, the court concluded that New Mexico did not intend for private prison operators or their employees to enjoy the same tort immunity as correctional officers employed directly by the State. The Court agrees with the reasoning in *Giron*.

Defendants next argue that a New Mexico appellate case and a New Mexico statute, read together, mandate immunity for at least Defendant Wagner. This contention, however, is inaccurate. The Court of Appeals in *McDermitt v. Corrections Corporation of America* did apply the NMTCA to CCA, but only because no party argued otherwise. 814 P.2d 115, 117 n.1 (N.M. Ct. App. 1991). Furthermore, this case and the statute on which it relied are distinguishable. *McDermitt* cited a statute which declares that: "Jailers, while acting within the scope of such law enforcement duties, shall be deemed law enforcement officers for purposes of the Tort Claims Act." N.M. Stat. Ann. § 33-3-28(A). The statute then defines the term "jailer" to include "any employee of a local jail who has inmate custodial responsibilities, including those persons

---

which acts as an independent contractor (as that term is generally used) cannot qualify a government instrumentality. As the New Mexico cases discussed above illustrate, a private corporation can only qualify as a government instrumentality if the State exercises intimate control over the details of the corporation's work. An independent contractor, by definition, retains control over the details of the work it performs.

employed by private independent contractors," *id.* § 33-3-28(D)(1), and defines "law enforcement duties" as including "the principal duty to hold in custody any person accused or convicted of a criminal offense or placed in the legal custody or supervision of a local jail," *id.* § 33-3-28(A). On its face, this statute therefore would seem to indicate that a person such as Defendant Wagner is deemed to be a "law enforcement officer[] for purposes of the Tort Claims Act."

However, as Plaintiffs point out, the cited statute only applies to "a facility operated by . . . a private independent contractor pursuant to an agreement with a county, municipality or combination of such local governments." *Id.* § 33-2-28(D)(2). Similarly, *McDermitt* concerned conduct occurring in the Santa Fe Detention Center, 814 P.2d at 116, and is therefore distinguishable from this case, where Camino Nuevo operates pursuant to a contract with a state agency, rather than a local governmental body. Defs.' Fact 1 (Doc. 108 at 2). Relevantly, the CCA prison in *Giron* also operated pursuant to a contract with the State of New Mexico, rather than a city or county. 14 F. Supp. 2d at 1246. Therefore, Defendant Wagner is not entitled to the protections of the NMTCA under this theory.

Fundamentally, the issue of whether Defendant CCA is entitled to the protections of the NMTCA depends on whether Defendants would have been entitled to the sovereign immunity of the state without the Act. NMTCA was enacted with the purpose of waiving the immunity enjoyed by the State of New Mexico, under limited conditions. The notion that a private corporation and its employee would be entitled to sovereign immunity simply for performing a "traditional state function" makes little sense when considering the purposes for which the NMTCA was enacted. Therefore, an Act waiving the state's sovereign immunity should not affect in any way the liability or immunity of a private corporation, unless the legislative intent

22

to the contrary is clear. In the case of private prison contractors, this legislative intent is not clear, and the NMTCA should not be held to apply.

A three-year statute of limitations thus governs this case. Plaintiffs Spurlock and Carrasco filed their initial complaint on August 12, 2009 (Doc. 1). On October 29, 2009, Plaintiffs filed an amended complaint which added Nina Carrera as a Plaintiff (Doc. 17). Plaintiff Spurlock alleges that she was sexually assaulted by Townes on February 13, 2007 and again on April 2, 2007. Plaintiff Carrasco alleges that she was sexually assaulted by Townes some time between February 1, 2007 and March 31, 2007. Each of these alleged assaults occurred less than three years before Spurlock and Carrasco filed their initial complaint. Plaintiff Carrera alleges that she was sexually assaulted by Townes some time between January and March of 2007. Again, this assault occurred less than three years before Carrera filed her claims against the Defendants in the amended complaint. Accordingly, the claims of all three Plaintiffs were filed within the three-year period. Therefore, Defendants are not entitled to summary judgment on Plaintiffs' state law claims based on the statute of limitations.

### B.    Intentional Torts

Plaintiffs argue that Defendant CCA can be held liable for the intentional torts committed by its employee, Townes, under the doctrine of respondeat superior. Defendants argue that Townes was acting outside the course and scope of his employment, thus defeating vicarious liability. The Court agrees.

In New Mexico,

> an act is within the course of employment if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done . . . with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise

> wholly from some external, independent, and personal motive on the part of the
> servant to do the act upon his own account.

*Childers v. S. Pac. Co.*, 149 P. 307, 308 (N.M. 1915) (citation omitted) (internal quotation marks omitted). Plaintiffs acknowledge that "case law from the early 1950s indicates that an employer will not be vicariously liable for intentional torts that arise from an employee's independent, personal motivation." Pls.' Resp. at 22 (Doc. 118). However, they argue that modern respondeat superior law has changed this test significantly, and that the law now looks to "policy" determinations in deciding whether to hold an employer liable. *Id.* at 22-23. They also argue that there is no evidence to support the fact that Townes' acts arose from his "independent, personal motivation" without making a credibility determination. *Id.*

The former argument is absurd. The Court has found ample modern statutory and case law in New Mexico affirming the principle that an act "aris[ing] entirely from some external, independent and personal motive on the part of the employee" falls outside the scope of employment.  UJI 13-407 NMRA (pattern jury instruction); *see also Bradley v. Lovelace Sandia Health Sys.*, No. 27,936, 2009 WL 6667452, at *6 (N.M. Ct. App. Nov. 13, 2009); *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 168 P.3d 155, 160-61 (N.M. Ct. App. 2007); *Los Ranchitos v. Tierra Grande, Inc.*, 861 P.2d 263, 267-68 (N.M. Ct. App. 1993). In addition, no New Mexico court has cited the modern California and Minnesota cases on which Plaintiffs rely.

Plaintiffs' latter argument similarly lacks merit, as it misstates the summary judgment standard. Plaintiffs attempt to create a dispute of fact by arguing that Townes' testimony "raise[s] obvious questions as to his credibility." Pls.' Fact 30 (Doc. 118 at 13). But in so doing, Plaintiffs are essentially asking this Court to make a determination that the testimony is non-credible—the very thing which they admit cannot be done on summary judgment. If Defendants

24

present evidence that Townes acted "entirely from some external, independent and personal motive," Plaintiffs must offer their own evidence to contradict that assertion. *See also Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1168 n.6 (10th Cir. 2000) (approving the district court's refusal "to sift through these facts in order to determine which, if any, may contradict defendants' proffered reasons"). Argument of counsel in a brief is insufficient to create a genuine dispute of fact.

Plaintiffs offer one last theory, that of ratification or authorization. They argue that Defendant CCA ratified Townes' illegal actions by: (1) imposing a policy of silence, intimidation and obedience at Camino Nuevo; (2) failing to take allegations seriously; (3) failing to comply with requirements of the state-CCA contract and state policies; (4) failing to investigate the allegations against Townes; and (5) retaliating against Plaintiffs following disclosure of their allegations. These allegations, however, do not show specific ratification of the problem of sexual assaults of inmates committed by prison guards.

"Ratification requires either knowledge of the material facts or circumstances sufficient to put a reasonable person on notice to inquire into these facts." *Jessen v. Nat'l Excess Ins. Co.*, 776 P.2d 1244, 1249 (N.M. 1989), *abrogated on other grounds by Paiz v. State Farm Fire & Cas. Co.*, 880 P.2d 300, 307-08 (N.M. 1994). This is a higher standard than either foreseeability or deliberate indifference. The Court has already rejected Plaintiffs' arguments that the Prison Rape Elimination Act put Defendant CCA on notice that prison rape was a problem at Camino Nuevo. Plaintiff does not offer any other evidence regarding Defendant CCA's notice of Townes' intentional torts. "Nor do we believe that . . . isolated instances [of misconduct] are sufficient to show . . . tolerance or ratification . . . ." *Rivera v. N.M. Highway & Transp. Dep't*, 855 P.2d 136, 139 (N.M. Ct. App. 1993). Lastly, Defendants' undisputed evidence shows that,

25

far from ratifying Townes' actions, they actually repudiated them by taking immediate action to restrict his access to inmates, terminate his employment, and turn the case over to outside law enforcement for investigation. Therefore, Defendant CCA cannot be held liable for Townes' intentional torts.

### C.    Negligent Training, Retention, and Management

Plaintiffs argue that the facts alleged are sufficient to show that Defendants can be held responsible for the negligent training, retention, and management of Townes. Plaintiffs rely on the doctrine of res ipsa loquitur, and on the theory that a finding that Townes acted "outside the scope" of his employment renders them automatically liable for negligence because they allowed one of their employees with authority over prisoners to take uncontrolled advantage of that authority.

Defendants respond that Plaintiffs should not be permitted to raise legal theories, such as res ipsa loquitur, in their response to a motion for summary judgment which were absent from the complaint. Tempted as the Court is to agree with them, based on the fact that Plaintiffs' initial complaint was filed over a year ago and they have since had the opportunity to amend it twice, Defendants have not argued, much less conclusively established, that responding to the new legal theory will cause them prejudice. "[A] plaintiff should not be prevented from pursuing a valid claim just because she did not set [it] forth in the complaint . . . provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits." *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991) (internal quotation marks omitted). The Court finds Defendants were not prejudiced by having to respond to Plaintiffs' new legal theory.

Nonetheless, Plaintiffs' argument fails on its merits. "The doctrine of res ipsa loquitur

26

applies only when evidence establishes that in the ordinary course of events an injury would not occur except through negligence of the person in exclusive control and management of the injuring instrumentality." *Trujeque v. Serv. Merch. Co.*, 872 P.2d 361, 364 (N.M. 1994). The exact opposite of Plaintiffs' assertions is therefore true: because the undisputed evidence shows that Townes was acting outside the scope of his employment, his actions were not within the "exclusive control and management" of Defendants. That is, a finding that Townes was acting outside the scope of his employment necessitates a finding that the instrumentality of the injury (Townes) was not within the control of Defendants at all, much less their exclusive control.

Without res ipsa loquitur, Plaintiffs' negligence claims nevertheless survive summary judgment. Even though neither party has actually discussed the elements of a negligence claim, if the evidence supports an inference of deliberate indifference to inmate safety, it certainly supports an inference of negligent disregard for inmate safety. *See Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994) (deliberate indifference standard is more than "mere negligence" but less than intentional infliction of harm).

**CONCLUSION**

Plaintiffs have raised a dispute of material fact sufficient to survive summary judgment on Plaintiffs' § 1983 claim of deliberate indifference (Count II). The dispute of material fact concerns *only* whether Defendants expressly discouraged inmates from filing complaints of staff misconduct. Defendants are granted summary judgment with respect to the other miscellaneous issues of purported factual dispute which Plaintiffs raise in their brief, and these claims therefore will not survive to be heard at a trial on the merits in this case. Plaintiffs' state law negligence claim (Count IV) also survives summary judgment.

**THEREFORE, IT IS ORDERED THAT** Defendant CCA and Barbara Wagner's Motion for Summary Judgment (Doc. 108) is GRANTED IN PART, with respect to Count III of the complaint, and DENIED IN PART, with respect to Counts II and IV of the complaint.

_____
UNITED STATES DISTRICT JUDGE