IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO
_____

HEATHER SPURLOCK,
SOPHIA CARRASCO, and
NINA CARRERA,

      Plaintiffs,

      v.                                      Civil No. 09cv786 WJ/SMV

ANTHONY TOWNES and BARBARA WAGNER,
in their individual capacities, and CORRECTIONS
CORPORATION OF AMERICA,

      Defendants.

**MEMORANDUM OPINION AND ORDER ON PLAINTIFFS' MOTION FOR
ATTORNEY FEES,
ORDER GRANTING MOTION TO WITHDRAW AND STRIKE AFFIDAVIT OF
AARON C. VIETS
and
DENYING AS MOOT DEFENDANTS' MOTION FOR RECONSIDERATION**

THIS MATTER comes before the Court upon Plaintiffs' Motion for Attorney Fees and

Expenses, filed June 8, 2012 (**Doc. 285**) and Defendants' Motion for Reconsideration, filed

October 24, 2012 (**Doc. 349**) and Motion to Withdraw and Strike Affidavit of Aaron C. Viets

(**Doc. 345**).   Having reviewed the parties' briefs, submissions and applicable law, I find that

Plaintiffs are entitled to an award of fees in the amount of $189,662.00, exclusive of gross

receipts tax to which Plaintiffs are entitled.   In making this determination, the Court overruled

Defendants' objections in part and sustained the objections in part, as discussed below.

## BACKGROUND

Plaintiffs in this case were serving criminal sentences at the Camino Nuevo Correctional

Center ("Camino Nuevo") in New Mexico during the time they were sexually assaulted. They

alleged Eighth Amendment and state law claims against Anthony Townes, a corrections officer at Camino Nuevo and Corrections Corporation of America ("CCA,") a private contractor that operated Camino Nuevo during the relevant time period, pursuant to a contract with the New Mexico Corrections Department. The case proceeded to trial by a jury which found, inter alia, that Plaintiffs Spurlock and Carrasco were comparatively negligent on their state-law claims against Defendant CCA. As stated in the Amended Judgment (Doc. 278), the jury awarded:

Plaintiff Spurlock $100,000 in compensatory damages against CCA, reduced by 54% comparative negligence. The jury also awarded Plaintiff Spurlock $1 million in punitive damages against Defendant Townes, and $5,000 in punitive damages against CCA. *See* Doc. 262 (Special Verdict).

Plaintiff Carrasco obtained a compensatory damages award in the amount of $125,000, reduced to $100,000 to reflect the jury's finding of 20% comparative negligence. She also obtained an award of $1 million in punitive damages from Townes, and $50,000 in punitive damages from CCA. The Court allowed Plaintiffs Spurlock and Carraso to collect compensatory damages awarded from Defendant Townes also, as long as the total amount recovered by Plaintiffs did not exceed the amount awarded by the jury.

Plaintiff Carrera obtained a jury award of $100,000 in compensatory damages against Townes. No liability was found on the part of CCA. *See* Doc. 278  (Amended Judgment).

Plaintiffs filed an appeal (Doc. 281) and Defendants a cross-appeal. Doc. 288.  Plaintiffs are appealing several of this Court's decisions, among them the decision to apply comparative negligence principles to Plaintiffs' state law claim of negligent supervision against Defendants CCA and Wagner ("Defendants CCA/Wagner").

Plaintiffs have also filed a motion for attorney's fees (Doc. 285) in which they seek an award of $426,273.22 together with post-judgment interest (Doc. 285). Defendants maintain that Plaintiffs are not entitled to recover any fees or expenses from Defendant Corrections Corporation of America ("CCA"), and also that any fees/expenses that are awarded should be no more than fifteen percent of Plaintiffs' request. *See* Doc. 292.  Defendants CCA/Wagner also contend that because Plaintiffs did not prevail on the § 1983 claim asserted against them, Plaintiffs cannot recover attorneys' fees and costs from them under 42 U.S.C. § 1988.  Thus, the parties' positions fall at opposite ends of the spectrum.

## DISCUSSION

Each Defendant has filed separate responses to Plaintiffs' motion for fees. The posture of the parties will guide the Court's analysis on the matter, and is as follows:

- Defendants CCA/Wagner contend that Plaintiffs are not entitled to recover *any* attorney fees or expenses from them.  For purposes of § 1983, Plaintiffs lost and CCA won.  Thus, Plaintiffs can recover only from Defendant Townes.

- Defendant Townes contends that he can only be required to pay reasonable fees associated with time devoted to matters of obtaining summary judgment against him and for a limited portion of the trial related to damages. Townes claims that he is  not liable for fees associated with Plaintiffs' counsels' failed federal claims against CCA/Wagner.

- Plaintiffs claim that they are entitled to fees and expenses for matters related to the § 1983 claims on which prevailed against Defendant Townes as well as the successful state law negligent supervision claim against CCA/Wagner.  Further, Plaintiffs argue that each Defendant should be held jointly and severally liable for the entire amount of the

3

requested fee award, including fees and expenses incurred in enforcing this Court's judgment, and work on any post-judgment motions or other pending matters.

## I.     Legal Standard

Under 42 U.S.C. § 1988(b), "[i]n any action or proceeding to enforce a provision of [section 1983]. . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  A plaintiff must be a "prevailing party" to recover an attorney's fee under § 1988.  The standard for making this threshold determination has been framed in various ways.  Typically, plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  It remains for the district court to determine what fee is "reasonable." *Id.*

A court will generally determine what fee is reasonable by first calculating the lodestar, which is the total number of hours reasonably expended multiplied by a reasonable hourly rate and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome. *Hensley,* 461 U.S. at 433-34.  In adjusting the lodestar, there is no precise rule or formula.  The Court has discretion in making this equitable judgment.  *Id*. at  436- 37.

## II.     Fees Requested Related to Claims Asserted Against Defendants CCA/Wagner

Plaintiffs contend they are entitled to fees and costs under § 1988 because they are "prevailing plaintiffs" under § 1988, and because each Defendant should be held jointly and severally liable for the entire amount of the requested fee award.

A.     <u>Plaintiffs Are Not Prevailing Plaintiffs as to Claims Asserted Against Defendants CCA/Wagner</u>

There is no disputing that Plaintiffs did not prevail on the §1983 claim asserted against Defendants CCA/Wagner, but were successful on the negligent supervision claim with regard to Plaintiffs Spurlock and Carrasco.  Nevertheless, Plaintiffs' counsel argue that they are entitled to fees in connection with the state law claim because pursuing this claim was necessary in order to ensure that their clients would be able to collect a money judgment.  They point out that litigating the negligent supervision claim was in response to "defense maneuvering" in making sure that CCA would not have to pay for Townes' misconduct. *See* Doc. 285 at 5.

The Court's first reaction to this explanation is that it is perfectly reasonable (as well as legally sound) for CCA to balk at paying for Townes' misconduct unless and until CCA was found to be liable in a court of law for that misconduct, and CCA was within its right to defend itself on that claim.  Second and more importantly, Plaintiffs' argument that the necessity of bringing the state law claim entitles Plaintiffs to fees under § 1988 is creative but legally incorrect.

It is understandable that Plaintiffs' counsel would embark on legal strategies to protect their clients' financial interests. However, the congressional intent behind § 1988 is to vindicate important civil rights, not necessarily to ensure that a prevailing civil rights plaintiff is able to collect a money judgment from a judgment-proof defendant:

> In enacting § 1988, Congress pointed out that "[a]ll of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

*Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997) (citing S.Rep. No. 1011, 94th Cong., 2nd Sess. 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910.). Congress noted that:

> In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the

Nations's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

S. REP. 94-1011, 2, 1976 U.S.C.C.A.N. 5908, 5909 – 5910.  Under the plain language of the legislative history of § 1988, it is clear that Congress intended that plaintiffs recover "what it costs them" to vindicate important civil rights.  Recovering costs for pursuing a lawsuit is very different from collecting a money judgment.

Plaintiff urges the Court to consider their claims as a whole, rather than evaluating the individual claims "as though they were discrete and severable," citing *Robinson v. City of Edmond,* 160 F.3d 1275, 1285 (10th Cir. 1998).  In *Robinson,* the Tenth Circuit noted that attorneys should "be given the breathing room to raise alternative legal grounds without fear that merely raising an alternative theory will threaten the attorney's subsequent compensation."  160 F.3d at 1285.  However, the plaintiff in *Robinson* actually prevailed on a § 1983 claim, based on the First Amendment freedom of religion. Thus, it was reasonable for the court to find that the plaintiff should not be penalized for a lack of success on other claims (which in *Robinson* were other civil rights claims), but rather to focus on the "significance of the overall relief" in determining fees under § 1988.  When fees and expenses are sought pursuant to § 1988 (as Plaintiffs do here), it makes no sense at all to find that a plaintiff has obtained this "overall relief" when success on a constitutional was obtained against only one of the defendants and none was obtained as to the other.

Plaintiff cites to other cases as well for this same proposition—that the Court should evaluate success as a whole rather than parse out the individual claims.  However, plaintiffs in these other cases as well had prevailed on civil rights claims.  In *Jaffee v. Redmond,* 142 F.3d 409 (7th Cir. 1998), plaintiff had prevailed on her constitutional claim but unsuccessfully argued the

existence of a federal evidentiary privilege in trying to obtain evidence of communications between the defendant and a social worker. Plaintiff in that case lost at trial on her state law claim. *Jaffee* is drastically different from the instant case because in *Jaffee,* the "unsuccessful" evidentiary privilege issue was argued in support of the constitutional claim on which plaintiff had prevailed. In *Hensley,* the United States Supreme Court also considered the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation" and noted that it was "difficult to divide the hours expended on a claim-by-claim basis." *Hensley v. Eckerhart,* 461 U.S. at 435. However, *Hensley* involved only constitutional claims and the plaintiffs in that case prevailed on the majority, but not all, of these claims. In the instant case, Plaintiffs prevailed on the constitutional claim only against Defendant Townes.

What these cases tell us is that a prevailing plaintiff who succeeds on a constitutional claim, but may not have succeeded on other constitutional claims, cannot be penalized for losing on those claims. The "significance of the overall relief" is the basis for fees and costs under § 1988. *Hensley* also cautions that if the unsuccessful claims are "based on different facts and legal theories[,]" "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Hensley,* 461 U.S. at 435 (quoted case omitted). In all of these cases, however, some success on constitutional claims is presumed as necessary in order to be considered a "prevailing plaintiff" for purposes of § 1988.

Case law on this issue supports Defendants' position. A plaintiff who loses on her federal claim and "recovers only on a pendent state claim is not a prevailing party under § 1988 and may not be awarded fees." *See Mateyko v. Felix*, 924 F.2d 824, 828 (9th Cir. 1990); *Hall v. W. Prod. Co.*, 988 F.2d 1050, 1057 (10th Cir. 1993) (acknowledging holding in *Mateyko*). The best

Plaintiffs do in attempting to rebut these cases is refer to *Plott v. Griffiths*, 938 F.2d 164, 167–68 (10th Cir. 1991) which addressed whether a plaintiff who obtains relief on state statutory rather than federal constitutional grounds is a prevailing party under § 1988.  In that case, the Tenth Circuit answered in the affirmative.  However, while the plaintiff in *Plott* prevailed in that lawsuit, the court found it was not necessary to decide his constitutional claims.  *Id.* at 167.   In the instant case, the jury very definitely decided Plaintiffs' constitutional claims, and found that CCA/Wagner were not liable to any of the Plaintiffs. Thus, there is no basis to consider Plaintiffs as "prevailing plaintiffs" under § 1988 as to Defendants CCA/Wagner where Plaintiffs did not succeed on any of their constitutional claims against these Defendants.

B.      Defendants Are not Jointly and Severally Liable for Entire Amount of Fee Award

Plaintiffs also contend that each Defendants should be held jointly and severally liable for the entire amount of the requested fee award.  Plaintiffs' objective is to collect the fee award as "prevailing plaintiffs" as to Defendant Townes (who is incarcerated and is judgment-proof) from Defendants CCA/Wagner (who are presumably not judgment-proof).

Defendants CCA/Wagner were found to be jointly and severally liable at trial under *state* law for their negligent hiring and supervision of Defendant Townes while he was employed as a corrections officer at CCA.  Moreover, their liability was not based merely on the fact that Townes was employed by CCA, but on CCA's own conduct.  Doc. 262; *see also* Doc. 277 at 8, n.6 (basis for joint and several liable for intentional torts).  Unfortunately for Plaintiffs, the fact that Townes was employed by CCA is not enough to make Defendants CCA/Wagner jointly and severally liable for any fees and expenses against Townes.  Under *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978), entities cannot be held liable under respondeat superior for acts of its employees.  *See also, Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d

8

1192, 1211 (10th Cir. 2007) (§ 1983 liability for an entity cannot be predicated on respondeat superior). Holding Defendants in this case jointly and severally liable for attorney fees and costs not only would wreak havoc with established *Monell* principles, but it would lead to the anomalous result that an entity would be jointly and severally responsible for fees and costs under § 1988 where it cannot be held liable for damages.

   In arguing that CCA should pay legal fees awarded against Defendant Townes, what Plaintiffs actually argue is that employers and entities should be made guarantors of judgments which are otherwise not collectible.  There is no legal support for this contention. The cases cited by Plaintiffs are inapposite because in those cases, *both* defendants had been found liable on the constitutional claims.  For example, in *Sinkov v. Americor, Inc.,* 419 Fed.Appx., 86, unpublished decision (2d Cir. 2011), a decedent's estate prevailed on a civil rights claim alleging failure to provide medical care to detainees, along with state law claims. The corporation that contracted with the county to provide medical care to inmates was found partially liable to plaintiffs on the civil rights claim.  The court in that case found that because the action "of several defendants produce[d] a single indivisible injury," the corporation "could properly be held jointly and severally liable for plaintiffs' fees."  419 Fed.Appx. at *6.  In *Coleman v. Kaye,* 87 F.3d 1491 (3rd Cir. 1996), the Third Circuit acknowledged the "well-established principle that when multiple defendants are held to be liable in a *civil rights action,* the proper course of action for a district court is to allocate responsibility for the payment of fees among the responsible parties." *Id.* at 1510 (emphasis added).   The court saw fit to do this only *after*  the court of appeals reinstated the jury verdict against the county.[1]  The same basis for fee apportionment does not

---

[1]   The district court vacated the jury's verdict against the county jury found the county liable based on procedural and jurisdictional grounds.  87 F.3d at 1496 & n.2.

exist in the case at bar because only Defendant Townes was found liable on the civil rights claims.

Aside from the absence of legal authority, there are other reasons that militate against holding Defendants jointly and severally responsible for fees.  The only constitutional claim that proceeded to trial was the § 1983 claim Plaintiffs asserted against Defendants CCA/Wagner. Defendant Townes' liability on the constitutional claim had been determined prior to trial. Doc. 76 (Order Granting Pltffs' Mot. for Partial Sum. J. as to Liability against Townes, filed May 26, 2010).  Plaintiffs argue that their counsel should be compensated for work on interrelated claims against each Defendant arising from a common core of facts and legal theories.  However, the claims asserted against Defendants CCA/Wagner were based on very different facts and legal theories from those which were asserted against Defendant Townes.  Claims asserted against Defendants CCA/Wagner rested on liability under *Monell* and state law theories which involved supervision and monitoring, whereas those claims asserted against Defendant Townes related to the physical and sexual assaults Plaintiffs suffered.  Plaintiffs were vindicated on their Eighth Amendment constitutional right to bodily integrity as asserted against Defendant Townes. However, they were not successful in their civil rights claim against Defendants CCA/Wagner which alleged that Defendants had a policy and custom of discouraging inmate complaints, and which thereby allowed and encouraged a pattern of behavior that resulted in Townes' conduct.

Based on the Court's foregoing discussion, the Court finds that Plaintiffs are not "prevailing parties" under § 1988 as to Defendants CCA/Wagner because they did not succeed on the constitutional claim asserted against these Defendants at trial.  Plaintiffs were "prevailing parties" with regard to the § 1983 claim asserted against Defendant Townes. However, the Court finds that there is no legal or statutory authority for holding each Defendant jointly and severally

liable for fees.  This means that Defendants CCA/Wagner cannot be held jointly and severally

liable for fees which are available to Plaintiffs as "prevailing parties" on the § 1983 claim against

Defendant Townes.

Accordingly, the Court sustains Defendant CCA/Wagner's objections to Plaintiffs'

motion for fees.  Having found that Plaintiffs are entitled to fees and expenses under § 1988 with

regard to claims successfully asserted against Defendant Townes, the next question is what

amount of fees are reasonable for the success achieved by Plaintiffs?

III.     **Fees Related to Successful § 1983 Claims**

Defendant Townes contends that he can only be required to pay reasonable fees

associated with reasonable attorney time devoted solely to the simple matters of obtaining

summary judgment against him and for a limited portion of the trial connected with the issue of

damages on Plaintiffs' Eighth Amendment claim against Townes.

The parties' submissions offer a plethora of information.  The most relevant documents

are Doc. 285-8, which are the timesheets submitted by the attorneys representing Plaintiffs, and

the detailed parsing of the timesheets conducted by Defendants in Docs. 292-1, 292-2 and 292-3.

In general, Plaintiffs disagree with Defendant Townes' capping of hourly rates and with

eliminating fee requests for time associated with the litigating of claims asserted against

Defendants CCA/Wagner. The Court has already found that Plaintiffs are not entitled to fees and

expenses as to claims asserted against those Defendants. On the other hand, where it appears

difficult or impossible to separate work done on the civil rights claims against Townes from

work done on claims against Defendants CCA/Wagner, the Court will allow Plaintiffs to be

reimbursed on those fees.

A.       <u>Hourly Rates</u>

The initial amount of combined fees requested by Plaintiffs is $383,102.00. The balance of Plaintiffs' total request of $426,273.22 is request is made up of expenses, *see* Plaintiffs' Ex. B (Doc. 285-9).   The Court finds merit to Defendants' objections to the hourly rates, although not to the full extent of those objections.  Plaintiffs' counsel have submitted affidavits supporting the requested hourly rates  (Docs. 285-1 to 285-6):

- Paul Kennedy - $450/hour;

- Mary Han - $350/hour;

- Arne Leonard - $300/hour;

- Nicole Moss- $225/hour;

- Darin Foster - $250/hour; and

- Sheila D'Ambrosio - $150.

The Court also adopts (as Defendant Townes' suggests) its own findings as to hourly rates in a previous case with this law firm as a starting point.  In *Martinez v. Carson*, Civil No. 08-1046 WJ/LFG, in considering the prevailing market rate for hourly fees, the Court noted that counsel had provided no evidence "that the New Mexico market would normally encompass such a rate, even at its upper end and particularly at a time when New Mexico is still suffering from the effects of what has been a prolonged period of economic downturn throughout the United States."  Doc. 231 at 6-7.  However, the Court finds that a reasonable increase is in order since the Court approved those hourly rates.   As a result, the Court finds these hourly rates to be reasonable for fees in this case:

- Paul Kennedy - $375/hour

- Arne Leonard - $250/hour[2]

- Nicole Moss - $175/hour

- Darin Foster - $175/hour

- Mary Han - $350/hour and

- Sheila D'Ambrosio - $150/hour)

Based on these hourly rates, the Court has recalculated the requested fees per attorney:

- Paul Kennedy - $92,250 for 246 hours

- Arne Leonard - $23,500 for 94.6 hours

- Nicole Moss - $57,225 for 327.02 hours

- Darin Foster - $90,825 for 518.35 hours

- Mary Han - $20,985 for 59.90 hours and

- Sheila D'Ambrosio - $8,250 for 110 hours.

Thus, the total requested attorneys' fees, based on what the Court considers to be reasonable hourly rates, amounts to $284,785.

B.     Reasonable Hours

        The Court has reviewed the parties' submissions and has considered Defendants' objections to Plaintiffs' timesheets.[3]  Defendants conducted an exhaustive, line-by-line review of the timesheets.  Defendants' briefs refer to selective portions of the timesheets, and conclude that 213 total hours can be attributed to prosecuting the claims against Townes.

        While Defendants have been forthcoming in providing the basis for their objections as to each and every listed task of Plaintiffs' counsel, there is no requirement that a district court, in

---

[2]   The Court notes that in arriving at a reasonable hourly rate for Mr. Leonard, the Court considers the resources and assets Mr. Leonard brings to Kennedy & Han, P.C. having worked as a law clerk to a federal district judge for ten years.  Doc. 285-3 at 3.

[3] Defendant Townes joins in CCA Defendants' Response in Opposition to Plaintiffs' motion for fees.  Doc. 296 at 1.

determining the reasonableness of a fee award, conduct what would constitute an audit of every one of Defendants' objections to the timesheets. *See Case v. Unified Sch. Distr. No. 233, Johnson County, Kan.,* 157 F.3d 1243, 1250 (10th Cir. 1998) (there is "no requirement "that district courts identify and justify each disallowed hour[;] nor is there any requirement that district courts announce what hours are permitted for each legal task.").  Instead, a district court may decide on "[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use." *Mares v. Credit Bureau of Raton,* 801 F.2d 1197 (10th Cir. 1986).

*1.     General Observations*

First, the Court agrees with Defendants that Plaintiffs are prevailing Plaintiffs with regard to their success on the Eighth Amendment against Defendant Townes.  However, Defendants' objections to some of the time entries are picayune and arbitrary.  For example, in objecting to Mr. Leonard's time in reviewing and editing proposed jury instructions, Defendants state that the time entry "lacks specificity" to determine which instructions were rejected by the Court, and which instructions specifically related to Townes.  The Court will not consider this type of objection, first because it does not explain how much *less time* Defendants would spend on such tasks (and why it *should* take less time to start with); second, because it downplays the fact that trial was made necessary in part because the Eighth Amendment claim against Townes had not been fully resolved; third, the law does not require the Court and its staff to engage in what the Court considers to be endless "bean counting" in arriving at a reasonable fee award.

At the time of trial, Defendant Townes had pled guilty to the assaults; had been adjudged civilly liable for the Eighth Amendment claims as to all Plaintiffs; and was sitting in a prison cell for his trial deposition.  Nevertheless, Townes did not own full responsibility for his conduct and

14

even seemed to deny the assaults.[4]  This meant that Plaintiffs had no choice but to proceed to

trial on the Eighth Amendment claim against Townes to determine damages.  On the other hand,

the Court is in full agreement with Defendants that the huge bulk of work done by Plaintiffs'

counsel was done in the hopes of establishing liability against CCA.  Plaintiff's counsel has

conceded as much.  *See* Doc. 285 at 5, 13.

        The Court has reviewed the timesheets, and concludes that Plaintiffs' time concerning

most of the discovery will be reimbursed unless it is clearly not connected to any of the claims

against Townes, including any of the state law claims which had been asserted against Townes

and on which Plaintiffs prevailed.[5]  However, where it appears that work done concerning claims

against Townes would have overlapped with work done in connection with claims brought

against Defendants CCA/Wagner, the Court will allow the reimbursement of fees.

        2.      *Compensable Hours for Mr. Arne Leonard*

        Plaintiffs request a fee award for Mr. Leonard's 94.6 hours of time spent in this case.

Most of this work relates to jury preparation, including jury instructions, motions in limine and

post-judgment motions, including the fee petition.  The Court finds it reasonable to award a fee

for half this time, as most of the trial was spent in pursuit of CCA's liability.  However, the Court

overrules Defendants' objections as to research time for Mr. Leonard.  Time spent familiarizing

oneself with the general area of law should normally be absorbed in the firm's overhead and not

be billed to the client.  *Phelps v. Hamilton,* 845 F.Supp. 1465, 1475 (D.Kan. 1994), *rev'd on*

*other grds,* 76 F.3d 393 (10th Cir. 1996); *see also Ramos v. Lamm,* 713 F.2d 546, 554 (10th Cir.

1983).  However, in light of Mr. Leonard's considerable time spent working as a federal law

---

[4]   The Court makes this statement based on evidence and arguments made in hearings on various motions prior to trial.  *See, e.g.,*  Docs. 248; 9:45 a.m. entry.
[5]   The Amended Complaint alleged intentional tort claims against Defendant Townes and Defendant CCA. *See* Doc. 17.

clerk, it is more likely that Mr. Leonard was already familiar with the areas of law at issue in this case, and was spending this time researching more case-specific legal issues. Also, the Court overrules objections to work done related to Plaintiffs' Thirteenth Amendment claims, or to work which included portions related to Defendant Townes. *See* entry 42.[6] This kind of piecemealing overlooks the significance of the fact that Plaintiffs obtained success on their constitutional claim against Defendant Townes.

Thus, the Court shall allow fees for 47 hours (half of the requested time) at $250/hour, amounting to $11,750.

### 2. *Compensable Hours for Mr. Darin Foster*

Mr. Foster spent a considerable number of hours of work on this case prior to the time the Court entered summary judgment for Plaintiffs on the Eighth Amendment claim against Defendant Townes—amounting to 227.6 hours. However, the Court will reduce by half the hours spent working on this case after that time, agreeing with Defendants that much of this time was dedicated to claims asserted against CCA (*see, e.g.,* entry 264 regarding respondeat superior). The Court also agrees with Defendants that there was some unnecessary duplication of effort in meeting with clients regarding the taking of depositions (*e.g.* entries 221 and 378). While counsel may be compensated in certain situations for doing the same work, the Court finds it unnecessary to compensate each attorney for performing essentially duplicative tasks. *See Praseuth v. Rubbermaid, Inc.,* 406 F.3d 1245 (10th Cir. 2005). Finally, much of Mr. Foster's time after May of 2010 was spent on work that focused on claims against CCA and did not overlap with claims against Defendant Townes. *See, e.g.,* entries 255, 256 & 284.

Therefore, Mr. Foster is entitled to a fee award for 372 hours of work (227 hours for work done prior to summary judgment for Plaintiffs on claim against Defendant Townes, plus

---

[6] The timesheets are conveniently listed chronologically, continuing through the entries for all attorneys.

145 hours which represents half of the remaining hours for which fees are requested), at an hourly rate of $175.00.  This amounts to a fee award of $65,100.00.

> 3.      *Compensable Hours for Ms. Mary Han*

Ms. Han's work on the case was done primarily after the Court granted summary judgment to Plaintiffs on the Eighth Amendment claim as to Defendant Townes.  However, the Court sustains Defendants' objections that there was considerable duplication in work done by Mr. Kennedy, e.g., when both Mr. Kennedy and Ms. Han attended depositions.  *See, e.g.,* entries 378-388.  There are also some entries associated solely with work done regarding CCA claims. *See e.g.,* entry 386.  However, the Court overrules objections to jury instructions, where Defendants suggest that jury instructions should be parsed to determine which jury instructions apply to specific claims.

For Ms. Han, the Court will allow a fee award of $10,482.00, representing 29.95 hours of work at $350/hour.

> 4.      *Compensable Hours for Ms. Nicole Moss*

Defendants contend that only 75 hours of Ms. Moss' time is chargeable to Townes.  Ms. Moss's work on this case spanned the time from August 29, 2011 to February 20, 2012 –well after the Court decided summary judgment in Plaintiff's favor on the Eighth Amendment claim against Townes.

The Court agrees that Ms. Moss should not be compensated for the time requested (327.02 hours).  The Court finds some of Ms. Moss work duplicative, e.g., on jury instructions where this work was shared with Mr. Leonard and Mr. Foster.  *See* entries 426, 426, 429, 431, & 432.  Some of the work applied only to claims against CCA, e.g., entry 426.  However, the Court will allow compensation for more time than Defendants see as appropriate.  Because the trial was

17

primarily focused on claims against CCA, except for the amount of damages to be awarded against Defendant Townes, the Court will reduce by half the number of  hours requested by Ms. Moss, and then further reduce those hours to account for duplication and for work done that was not related to claims against Defendant Townes.

As a result, the Court will allow an award of fees as to Ms. Moss for 100 hours at $175/hour, amounting to $17,500.00.

5.      *Compensable Hours for Mr. Paul Kennedy*

The Court acknowledges that the reduction for duplication in attending depositions, deposition preparation, and trial preparation, must eventually rest at someone's doorstop.  Since Mr. Kennedy is the highest-billing attorney in this litigation, the Court will allow Mr. Kennedy's time to be reimbursed for that work that others may have shared in doing.  For that reason, the Court overrules Defendants' objections based on duplication of effort.  The Court also overrules objections going to work on trial preparation, closing arguments, jury instructions and motions presented at trial.  Defendants ask that time be "reduced" for these entries, but do not suggest a reasonable amount of time that should have been spent instead.  Also, it would be nearly impossible to allocate time and effort that went to specific claims.

The Court notes a few entries that are clearly devoted to claims asserted against Defendants CCA/Wagner, either concerning time spent relating to briefing of claims asserted against those Defendants, or to depositions taken of Defendant Wagner.  *See, e.g.,* entries 555-559, 574, 576.   Accordingly, the Court will allow reimbursement for 175 of the 246 hours expended at an hourly rate of $375.00, bringing the fee award to $65,625.00 for Mr. Kennedy.

6.      *Compensable Hours for Ms. Sheila D'Ambrosio*

The Court agrees in large part with Defendants' objection to reimbursement of Ms. D'Ambrosio's time.  Much of Ms. D'Ambrosio's time was spent on tasks concerning discovery related to CCA, or to purely clerical tasks.  *See, e.g.,* entries 748-751; 752, 767-768.  However, the Court does not agree with Defendants' assessment that "virtually none of attorney D'Ambrosio's time is properly chargeable to Mr. Townes. . . ."  Doc. 296 at 5.  Ms. D'Ambrosio did spend some time in deposition preparation of Defendant Townes (e.g., entries 757-758).   Because Ms. D'Ambrosio's time was spent primarily on claims related to Defendants CCA/Wagner, the Court will allow an  hourly rate of $150 for 50 hours (instead of the 110 hours requested), amounting to a fee award of $7,500.00

7.    *Total Fee Award*

Thus, after determining a reasonable hourly rate for the attorneys who represented Plaintiffs in this case, and determining a reasonable number of hours, the Court concludes that the final tally for a fee award is **$177,957** (Mr. Kennedy: $65,625; Mr. Foster: $65,100; Mr. Leonard: $11,750; Ms. Moss: $17,500; Ms. Han: $10,482; and Ms. D'Ambrosio: $7,500).  The Court notes that in calculating a reasonable number of hours, the Court took into consideration other facts such as the success obtained on claims asserted against Defendant Townes, and the lack of success on any civil rights claim against the other Defendants.  The Court also reviewed the timesheets on Defendants' objections as to work that was purportedly excessive, unnecessary or duplicative.  The Court took into account that some of this work involved work on claims asserted solely against Defendants CCA/Wagner, and thus adjusted the lodestar at the same time. In other words, work that the Court determined should not reimbursed based on a lodestar reduction would have been reduced on grounds of being excessive, unnecessary or duplicative. However, these categories were not reduced twice.

19

**IV.    Other Expenses**

Plaintiffs request other expenses amounting to $11,858.75.  Defendants challenge some of these expenses.  Pltffs' Ex. 9.   First, the Court rejects Defendants' contention that they should not have to pay for the costs related to Plaintiffs' fee petition because it does not relate to any of the § 1983 claims.  A prevailing plaintiff in a civil rights action prepares a fee petition as a matter of course, and as such the preparation is compensable within the Court's discretion.  *David C. v. Leavitt,* 900 F.Supp. 1547, 1553 (D.Utah 1995) ("Finally, the court must determine to what extent a plaintiff will be compensated for time spent preparing the fee petition itself.").[7] The notion that reimbursement for the fee petition is not recoverable because Plaintiffs did not prevail on all civil rights claims is unfair to Plaintiffs.

The Court also overrules objections to an entry for $2,903 for plaintiffs' lodging in Albuquerque and their meals during trial.  Defendants contend that these costs are not recoverable, citing to *Hodge v. Seiler,* 558 F.2d 284, 287 (5th Cir. 1977).  However, *Hodge* states that expenses "incurred in traveling to the place of trial" are allowed "as of course" to the prevailing party under 28 U.S.C. § 1920.  *Id.*   It appears that Plaintiffs did not seek to tax these costs when they filed a motion to tax costs (*see* Docs. 284, 301 & 322).  While it would have been appropriate for Plaintiffs to request this amount as a cost item under § 1920, the Court will not penalize Plaintiffs for seeking reimbursement in their motion for fees and expenses. Thus, Defendants' objections on this issue are overruled.

Defendants raise other objections which do have merit.  Plaintiffs seek reimbursement of $1,151.55 for mediation costs, which are not reimbursable or taxable.  *See Aerotech Resources, Inc. v. Dodson Aviation, Inc.,* 237 F.R.D. 659, 666 (D.Kan. 2005).

---

[7]   The Court considered the entries related to the preparation of the fee petition, and did not allow these expenses when determining fees for counsel.

Mr. Kennedy and Ms. Han also both seek travel expenses incurred in attending depositions for Defendant Wagner and for Jeffrey Francis. The Court disagrees with defendants that such expenses are not reimbursable. While they may not be reimbursable as costs under Rule 54, they are recoverable under § 1988. *See King v. Gowdy,* 268 Fed.Appx. 389, 390, 2008 WL 624773, 1 (6th Cir. 2008) (expenses relating to counsel's travel and meals for depositions and trial were not reimbursable as "costs" pursuant to rule 54, but were "induced as a component of 42 U.S.C. § 1988).[8]   However, the Court denies these expenses on the alternate basis argued by Defendants in that the depositions of Wagner and Francis are not related to the §1983 claim on which Plaintiffs prevailed. Moreover, the Court would have found that it excessive to seek reimbursement of expenses for two named partners at these depositions. Plaintiffs do not dispute the case law which holds that such expenses are not recoverable. Instead, they state that they are willing to accept a "reduced hourly rate for travel time." Doc. 302 at 12, n.5.

The Court sustains Defendants' objections to Plaintiffs' request for reimbursement in the amount of $1,738.00 covering the costs of transcription of the Plaintiffs' telephone calls. As Defendants note, these transcripts were never utilized by Plaintiffs at trial, and (according to Defendants) were not produced in discovery.

Plaintiffs seek $4,495.33 for copies ($2,719.50), faxes ($138.50), postage ($126.59), and Westlaw research ($1,510.74). Pltffs' Ex. 10. Under Tenth Circuit case law, items that are normally itemized and billed in addition to the hourly rate as "other expenses" are included in fee

---

[8]   The cases cited by Defendants for their position all involve the issue of reimbursement under Fed.R.Civ.P.54, not § 1988. *See Wahl v. Carrier Mfg. Co., Inc.*, 511 F.2d 209, 217 (7th Cir.1975) (attorneys' travel expenses incurred in attending depositions, pretrial conferences, and trials, as well as expenses incurred in making investigations are not recoverable costs); *Kenny A. ex rel. Winn v. Perdue*, 454 F.Supp.2d 1260 (N.D. Ga. 2006) (costs of business meals were not recoverable as meals are an ordinary item of overhead for law firms); *Odom v. Frank,* 782 F.Supp. 50 (N.D.Tex.,1991) (Allowable costs in postal worker's employment discrimination action could not include expense of nonattorney advisor at administrative hearing, his attorneys' travel expenses related to depositions, or standard messenger and postage fees).

allowances in civil rights cases, if reasonable in amount.  *See Ramos,* 713 F.2d at 559.

Defendants balk at the excessiveness of the amount requested for copying, and the lack of

adequate documentation for this general category of expenses.  While the documentation is not

detailed, the Court finds that $4,495.33 is not excessive, given the level of aggressiveness this

case endured for a considerable length of time.  The Court takes special note of the $1,510.74 for

Westlaw research, which was clearly *not* for the purpose of familiarizing Plaintiffs' counsel with

this area of the law.  If that were the case, the Court would have expected a much higher amount

in this category, as the civil rights area of law is a difficult one and counsel in this case (on both

sides) obviously have a very sophisticated grasp of this area of law.  Thus, the Court overrules

Defendants' objections to these costs amounting to $4,495.33.  *Case,* 157 F.3d at 1558 (10th

Cir. 1998) (affirming award of attorney fees that included expense of computerized legal

research); c*mp. Ramos,* 713 F.2d at 554 (reading background cases designed to familiarize the

attorney with this area of law is time that "would be absorbed in a private firm's general

overhead and for which the firm would not bill a client")

      Any other objections by Defendants (e.g., an objection to $26.60 for copying documents

not produced or used in the case) are summarily rejected by the Court.   There is no need for a

district court to engage in a micro-detailed, bean counting analysis of the time sheets.  *See*

*Ramos,* 713 F.2d at 546 (items that are normally itemized and billed in addition to the hourly rate

should be included in fee allowances if reasonable in amount).  Thus, Plaintiffs's request for

$11,858.00 in expenses (rounded out) will be reduced by $4,649 ($1,760 for travel to

depositions; $1,151 for mediation costs; and $1,738 for transcripts of inmate calls), bringing the

total amount of these expenses to $7,209.   Adding in reimbursable costs of $4,495.00 and

attorneys' fees in the amount of $177,957 (representing reasonable hourly rates for reasonable hours), the total fee award is **$189,662.00**.

Finally, Plaintiffs requests a gross receipts tax of $26,816.14 on the amount of $426,273.22.[9]  Defendants do not appear to object to this tax.  *See Herrera v. First Northern Sav. and Loan Ass'n,* 805 F.2d 896, 902 n.3 (10th Cir. 1986) (noting that some courts have included the gross receipts tax as part of attorney's fee awards with ho discussion).  The Court leaves it to the parties to calculate the applicable gross receipts tax on the amount of **$189,662**.

## V.      Motion for Reconsideration and Motion to Withdraw and Strike

Defendants recently filed a motion for reconsideration regarding the Court's directive to Defendants to present the Court with timesheets and affidavits relating to the number of hours expended on defending this case.  (Doc. 349, filed October 24, 2012, responding to Court's Order, Doc. 339).   In light of the Court's disposition of the fee issue on its merits in this Memorandum Opinion and Order, Defendants' motion for reconsideration is denied as MOOT.  In addition, the Motion to Withdraw and Strike the Affidavit of Aaron C. Viets (Doc. 345) is also MOOT for the same reason.

## CONCLUSION

Based on the Court's foregoing discussion, the Court finds that Plaintiffs are "prevailing parties" in this lawsuit on the basis that they prevailed on their Eighth Amendment claim against Defendant Townes.  They were not successful in their constitutional claim asserted against the other Defendants.  Plaintiffs contend that their lack of success on the constitutional claims asserted against the other Defendants should not be considered at all, regardless of the fact that the § 1983 claims asserted against Defendants CCA/Wagner were based on different facts and

---

[9]  Plaintiffs do not specify the percentage requested for the tax.  According to the Court's calculation based on the original requested fee, the gross receipts tax requested by Plaintiffs' is based on 6.2%.

different legal theories.  As discussed above, the Court finds this position to be unsupported by either the Congressional intent behind § 1988 or the relevant case law, and concludes that Defendants CCA/Wagner are not liable for any of the attorney fees.

While the Court agrees with Plaintiffs that in general it is inappropriate for a district court to evaluate individual claims as discrete and severable when determining attorneys' fees under § 1988 (*see Robinson,* 160 F.3d at 1285), in this case it would be legally insupportable to award the requested amount of fees without a second look at what work related to specific claims, and which of the Defendants.  Plaintiffs cannot ignore the reality that the only success they obtained on their §1983 claims was determined as a matter of law prior to trial and was obtained as to only one Defendant.  Further, the § 1983 claims asserted against the other Defendants—Defendants CCA/Wagner—were based on different facts and theory of liability.  Because these claims are intrinsically separable, Plaintiffs' time sheets can be deconstructed to some degree—and were—to determine what time was spent on different claims.  Thus, Plaintiffs are entitled to a fee award for reasonable work done on the §1983 claims on which they prevailed.

There is no basis for awarding fees for work done on unsuccessful claims asserted against separate Defendants just because these individuals were named in the same lawsuit or because CCA employed Defendant Townes.  The Court also rejects Plaintiffs' argument that Defendants are jointly and severally liable for the fee award, when it is very clear that Defendants CCA/Wagner were not found liable for its own conduct under § 1983. [10]  It makes no sense to find CCA/Wagner jointly responsible for the payment of legal fees for claims on which Plaintiffs

---

[10]   Plaintiffs' insistence that CCA's employment of Townes somehow allows them to collect fees on claims asserted against CCA rests on shaky ground.  Plaintiffs' success on their state law negligent supervision claim against Defendant CCA does not entitle them to fees under § 1988.  Also, the fact that CCA employed Defendant Townes does not establish liability for either state law claims or constitutional claims.  If it did, Plaintiffs would not have needed to establish anything more than the fact of Townes' employment to establish liability.

prevailed only against Defendant Townes, when no law or statute makes CCA/Wager liable for damages on the underlying claims.

Accordingly, the Court finds and concludes that Plaintiffs are entitled to a fee award of **$189,662**, based on the following calculations: the total amount of requested fees/expenses was $426,272.22.  The actual fees requested (exclusive of expenses and costs) was $383,102.  The latter amount was reduced to $284,785 based on the Court's determination of reasonable hourly rates.  Using these rates and based on a reasonable number of hours expended on the case (excluding, e.g., work done solely on claims asserted against Defendants CCA/Wagner), the allowable amount of attorneys' fees is $177,957.   Plaintiffs requested $11,858, which the Court reduced to $7,209.   Allowable costs are $4,495.   Thus, Plaintiffs are entitled to fees ($177,957) and expenses and costs ($7,209 and $4,495) in the amount of **$189,662**.   In addition, Plaintiffs are entitled to gross receipts tax on that amount.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Motion for Attorney Fees and Expenses (**Doc. 285**) is hereby GRANTED IN PART in that Plaintiffs are entitled to an attorneys' fee award under 42 U.S.C. § 1988 in the amount of **$189,662** plus gross receipts tax,;

**IT IS FURTHER ORDERED** that Defendants' Motion for Reconsideration (**Doc. 349**) is hereby DENIED AS MOOT for reasons described in the above Memorandum Opinion and Order;

**IT IS FINALLY ORDERED** that the Motion to Withdraw and Strike is hereby DENIED AS MOOT.

_____
UNITED STATES DISTRICT JUDGE