**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## TENyTH CIRCUIT

**September 12, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

---

HEATHER SPURLOCK; SOPHIA
CARRASCO; NINA CARRERA,

      Plaintiffs-Appellants/Cross-
      Appellees,

v.

ANTHONY TOWNES, in his
individual capacity; BARBARA
WAGNER, in her individual capacity;
CORRECTIONS CORPORATION OF
AMERICA,

      Defendants-Appellees/Cross-
      Appellants.

Nos. 12-2094; 12-2101;
12-2168; 12-2210
(D.C. No. 1:09-CV-00786-WJ-SMV)
(D.N.M.)

---

## ORDER AND JUDGMENT[*]

---

Before **TYMKOVICH**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

    Heather Spurlock, Sophia Carrasco, and Nina Carrera (collectively,

"Plaintiffs") sued Corrections Corporation of America ("CCA") and Warden

Barbara Wagner (collectively, "Defendants"), as well as Officer Anthony

---

    [*]    This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

Townes,[1] after they were sexually assaulted by Officer Townes at a private detention center operated by CCA.  They alleged violations of the Eighth Amendment, through the vehicle of 42 U.S.C. § 1983, and also of New Mexico tort law.  The case was eventually tried before a jury.  The jury found for Plaintiffs on some claims and Defendants on others, and awarded damages accordingly.  These appeals and cross-appeals ensued, and raised five issues: (1) whether Defendants must pay the judgment against Officer Townes under N.M. Stat. Ann. § 33-1-17; (2) whether the special verdict form properly allowed for Plaintiffs' comparative fault to be assessed; (3) whether the jury instructions impermissibly limited Plaintiffs' Eighth Amendment claim to a single theory of liability; (4) whether the district court erred in awarding costs to Plaintiff Carrera under Federal Rule of Civil Procedure 54(d); and (5) whether Defendants are liable to pay the attorneys' fees Plaintiffs were awarded against Officer Townes and whether the district court's calculation of those fees was in error.

In order to resolve the second issue, involving comparative fault, we certified to the New Mexico Supreme Court ("NMSC") the question of whether New Mexico recognizes the affirmative defense of comparative fault on negligent-supervision claims.  In response, the NMSC issued a decision recognizing a new theory of vicarious liability (for which it rejected the use of

---

[1]     Although there are technically three defendants—Officer Townes, Barbara Wagner, and CCA—Officer Townes elected not to participate in this appeal.  Accordingly, references to "Defendants" include only Ms. Wagner and CCA; Officer Townes is referred to as "Officer Townes."

comparative-fault principles).  It applied that theory to Plaintiffs' vicarious-liability claim—which had been dismissed on summary judgment—and concluded that Defendants CCA and Ms. Wagner should be held liable for all compensatory damages resulting from Officer Townes's tortious conduct.  Because the NMSC held that full compensatory damages should be awarded to all Plaintiffs under the vicarious-liability claim, and because New Mexico law ordinarily prohibits double recovery of compensatory damages, the NMSC declined to resolve the issue of comparative fault with respect to Plaintiffs' negligent-supervision claim.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291.  And, with the NMSC's rulings in mind, we **affirm** in part, **vacate** in part, **reverse** in part, and **remand** for further proceedings.

# I

In 2007, Officer Townes sexually assaulted all three Plaintiffs while they were inmates at the Camino Nuevo Correction Center ("Camino")—a New Mexico all-female prison privately operated under contract by CCA—where Officer Townes was employed as a prison guard.  Plaintiffs sued under 42 U.S.C. § 1983, alleging violations of, *inter alia*, the Eighth Amendment and also sought relief under New Mexico state law.[2]

---

[2]     "To state a claim under § 1983, a plaintiff . . . must show that the alleged [constitutional] deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *accord Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1207 (10th Cir. 2005); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).   Neither the district court nor the parties question the proposition that, during the events material here, CCA—a

Before trial, the district court issued several rulings pertinent to this appeal.  The court granted summary judgment for Plaintiffs on the issue of liability as to the Eighth Amendment § 1983 claim against Officer Townes.  However, it refused to hold Defendant CCA strictly liable under a *respondeat superior* theory for the constitutional harms caused by Officer Townes; it reasoned in part that N.M. Stat. Ann. § 33-1-17 does not make private prison-

---

private company operating Camino under contract with the State of New Mexico—and its employees, Defendant Wagner and Officer Townes, were acting under color of state law and, thus, subject to suit under § 1983.  Guided by Supreme Court and persuasive circuit court authority, we have no reason to question this collective judgment. *See West*, 487 U.S. at 54 ("Respondent, as a physician employed by North Carolina to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury.  Such conduct is fairly attributable to the State."); *id.* at 55–56 ("The fact that the State employed respondent pursuant to a contractual arrangement that did not generate the same benefits or obligations applicable to other 'state employees' does not alter the analysis. It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State."); *see Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) (per curiam) (ruling as to a "private prison-management corporation" operating a prison on the State of Texas's behalf that such entities "and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury. Clearly, confinement of wrongdoers—though sometimes delegated to private entities—is a fundamentally governmental function"); *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (holding as to a private corporation operating a detention center under contract with a county that it "no doubt [is] performing a public function traditionally reserved to the state" and concluding that it "was acting under color of law"); *see also Evans v. Newton*, 382 U.S. 296, 299 (1966) ("[W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations."); *Smith v. Cochran*, 339 F.3d 1205, 1215–16 (10th Cir. 2003) ("[P]ersons to whom the state delegates its penological functions, which include the custody and supervision of prisoners, can be held liable for violations of the Eighth Amendment.").

management companies like CCA strictly liable for the tortious conduct of their employees.  Further, the court granted summary judgment for Defendants as to all but two of the claims against them (specifically, as to all but the Eighth Amendment and negligent-supervision claims).  Notably, in this regard, the court granted Defendants summary judgment on Plaintiffs' state-law vicarious-liability claim.  It explained that Defendants could not be held vicariously liable for Officer Townes's intentional torts under a *respondeat superior* theory because he was not acting within the course and scope of his employment when he sexually assaulted Plaintiffs.

The case proceeded to trial: the jury was called on to decide liability regarding only the two claims against Defendants that survived summary judgment—i.e., the Eighth Amendment and negligent-supervision claims—and also the damages to be awarded for the claims for which the court had already determined that Officer Townes was liable.  The jury found for Defendants on the Eighth Amendment claim, and for Plaintiffs Spurlock and Carrasco—but not for Plaintiff Carrera—on the negligent-supervision claim.

As to the Eighth Amendment § 1983 claim against Officer Townes, each Plaintiff was awarded some compensatory damages and $1,000,000 in punitive damages.  In addition, Plaintiffs Spurlock and Carrasco were awarded $51,000 and $130,000, respectively, in compensatory and punitive damages against Defendants for the negligent-supervision claim.

In calculating the damages awards for the negligent-supervision claim, the jury was instructed by the court as to each Plaintiff on a special verdict form, which used essentially identical language, to "[s]tate in a percentage how comparatively negligent Defendants CCA and Barbara Wagner were, and how comparatively negligent [each Plaintiff] was."  Aplts.' App. at 1268, 1274 (Special Verdict Form, filed Feb. 16, 2012).  The jury found Ms. Spurlock fifty-four percent comparatively negligent and Ms. Carrasco twenty percent comparatively negligent, and reduced their compensatory-damages awards accordingly.

These cross-appeals ensued.  Because they presented, *inter alia*, an important open question regarding Defendants' ability to raise a comparative-fault defense against Plaintiffs under New Mexico law, we requested that the NMSC exercise its discretion to accept the following certified question of state law:

> When an inmate is sexually assaulted by a corrections officer, does New Mexico recognize the affirmative defense of comparative fault—permitting the comparison of the correctional facility/employer's alleged negligence with the alleged fault of the inmate victim—for the purpose of reducing the amount of a judgment entered on the inmate's state-law claim of negligent supervision of the tortfeasor-officer by the employer?

Order Certifying Question to NMSC ("Certification Order"), at 15 (Dec. 8, 2014). In our Certification Order, we made clear that "[o]ur phrasing of this question [was] not intended to limit the New Mexico Supreme Court's scope of inquiry.

Rather, we acknowledge[d] that the court may reformulate our question, and we invite[d] the court to do so in any way it [found] helpful." *Id.* Pending the NMSC's resolution of our certified question, we abated the appeal. *See id.*

On March 14, 2016, the NMSC issued an opinion responding to our Certification Order. *See Spurlock v. Townes*, 368 P.3d 1213 (N.M. 2016). In its opinion, the NMSC "exercise[d] [its] discretion to reformulate the [certified] question." *Id.* at 1216 (citation omitted). It "h[e]ld that under New Mexico law CCA and Wagner are vicariously liable for all compensatory damages caused by the corrections-officer employee when he was aided in accomplishing his assaults by his agency relationship with CCA and Wagner who were his employers[,]" and "[n]o affirmative defense of comparative fault is available in this context." *Id.*

The NMSC explained that under an "aided-in-agency theory" of vicarious liability, an employer may be held liable for the intentional torts of an employee—even if the employee was acting *outside* the scope of his or her employment—if the employee "was aided in accomplishing the tort by the existence of the agency relation." *Id.* at 1216–17 (quoting *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 71 (N.M. 2004)). The NMSC established that, "[i]n order to prevail under an aided-in-agency theory, Plaintiffs had to prove that Townes was aided in accomplishing his assaults by his status as a corrections officer that afforded him substantial power and control over Plaintiffs." *Id.* at 1217–18. And the court concluded that Plaintiffs did prevail on this theory because Officer Townes "used the authority vested in him by his position as a

7

corrections officer to coerce Plaintiffs, who were inmates entrusted to his care, into submitting to sexual assault and false imprisonment." *Id.* at 1218.

As a result of this holding, the NMSC concluded: "Because CCA and Wagner are fully liable for [the compensatory damages] award under vicarious liability principles regardless of any direct negligence on their part, we do not reach the claim of negligent supervision nor any theories of comparative fault that might have been applicable to that theory." *Id.* at 1219. The NMSC explained that it was "declin[ing] to determine the availability of an affirmative defense alleging Plaintiffs' comparative fault in a claim of liability for negligent supervision of an intentional tortfeasor because the vicarious liability of CCA and Wagner ma[de] th[at] determination unnecessary." *Id.* at 1216. In this regard, the NMSC referred to New Mexico's prohibition on double recovery and noted its desire to avoid addressing unnecessary certified issues which could result in it handing down an advisory opinion. *See id.*

## II

With the NMSC's answer to our certified question in hand, we now address all five claims that Plaintiffs previously raised on appeal—as well as a sixth claim that Plaintiffs raise for the first time on appeal in their post-certification briefing. Specifically, we address: (1) whether Defendants must pay the judgment against Officer Townes under N.M. Stat. Ann. § 33-1-17; (2) whether the district court's special verdict form properly allowed for Plaintiffs' comparative fault to be assessed regarding the negligent-supervision claim; (3)

whether the court's jury instructions impermissibly limited Plaintiffs' Eighth Amendment claim to a single theory of liability; (4) whether the court erred in awarding costs under Federal Rule of Civil Procedure 54(d); and (5) whether Defendants are liable to pay the attorneys' fees Plaintiffs were awarded against Officer Townes and whether the district court correctly calculated those fees.  In addition, we address Plaintiffs' claim that the NMSC's certified answer opened the door for them to receive punitive damages for their vicarious-liability claim, a claim the district court previously dismissed on summary judgment.  We address each of these six issues in order.

## A

Regarding the first issue, we conclude that N.M. Stat. Ann. § 33-1-17 does not require Defendant CCA to pay the full judgment against Officer Townes.  We review de novo the district court's interpretation of a state law.  *See Cent. Kan. Credit Union v. Mut. Guar. Corp.*, 102 F.3d 1097, 1104 (10th Cir. 1996).

N.M. Stat. Ann. § 33-1-17 provides, in relevant part, that New Mexico's "corrections department may contract for the operation of any adult female facility or for housing adult female inmates in a private facility with a person or entity in the business of providing correctional or jail services to government entities[,]" N.M. Stat. Ann. § 33-1-17(A), and that any such contract "shall include provisions:"

. . . .

(2) that the contractor assumes all liability caused by or arising out of all aspects of the provision or operation of the facility; [and]

(3) for liability insurance or other proof of financial responsibility acceptable to the general services department covering the contractor and its officers, employees and agents in an amount sufficient to cover all liability caused by or arising out of all aspects of the provision or operation of the facility[.]

*Id.* § 33-1-17(D)(2)–(3).  Plaintiffs contend that subsections (2) and (3) require CCA to assume all liability for injuries caused by Officer Townes (its former employee).

The district court rejected Plaintiffs' interpretation of section 33-1-17.  The court observed that it is "patently false" that § 33-1-17's indemnification language—which requires the contractor to assume "all liability" arising from the contract—states that CCA is "strictly liable for any torts committed by its employees."   Aplts.' App. at 185–86.  (Dist. Ct. Order, filed May 26, 2010).  Instead, the court explained, "any plaintiff suing CCA under the contract must first show that CCA is actually liable for misconduct under some viable legal theory."  *Id.* at 186.  Thus, in the district court's view, "CCA is merely agreeing [in the contract] to hold New Mexico harmless for any liability which may arise and to indemnify New Mexico for any expenses it incurs in defending against such liability.  CCA is *not* agreeing to be held strictly liable under a *respondeat superior* theory for the constitutional violations of its employees."  *Id.* at 187.

We deem the district court's reasoning to be sound and cogent.  We uphold its order for substantially these same reasons.  In other words, we agree that N.M. Stat. Ann. § 33-1-17 does not require Defendant CCA to assume liability for injuries caused by Officer Townes.  As a result, we affirm as to this issue.

**B**

**1**

Turning to the second issue, involving the viability of an alleged comparative-fault defense to Plaintiffs' negligent-supervision claim and our certified question, we begin with the NMSC's holding regarding vicarious liability under an aided-in-agency theory, because it impacts our disposition of the comparative-fault negligent-supervision issue.  In brief, we adopt the NMSC's vicarious-liability holding but only deem it applicable to *Defendant CCA* because only CCA and not Ms. Wagner is named in the operative complaint. Consequently, we conclude that the district court erred in its summary-judgment ruling regarding vicarious liability.  We therefore remand for the district court to enter judgment in favor of all Plaintiffs and against Defendant CCA on the vicarious-liability claim, with instructions to award full compensatory damages to all Plaintiffs on that claim.  But, for the reasons noted below, we conclude that Plaintiffs cannot recover compensatory damages from either Defendant CCA or Ms. Wagner based on their negligent-supervision claim and do not reach the comparative-fault issue that we actually certified to the NMSC.

More specifically, we adopt the NMSC's holding of vicarious liability under an aided-in-agency theory. However, we apply that holding only to Defendant CCA; only CCA is a named defendant in the vicarious-liability claim of the operative complaint—not Ms. Wagner. Accordingly, we hold that Defendant CCA is fully liable for Officer Townes's intentional torts under an aided-in-agency theory.

It goes without saying that the NMSC is the final word regarding New Mexico tort law. Defendants argue nevertheless that it would be unfair for us to adopt the NMSC's holding because the NMSC did not answer the certified question, and because the NMSC "effectively amended the Plaintiffs' complaint to add [a] new theory of liability." Aplees.' Suppl. Mem. Br. at 1. We disagree.

The vicarious-liability claim *as to Defendant CCA* was present in the operative complaint and—even though it did not specifically mention an aided-in-agency theory—it provides the ultimate predicate for CCA's liability.[3] In its certified answer, the NMSC simply clarified the scope and substance of Plaintiffs' vicarious-liability claim; in particular, it clarified the permissible conditions under which relief could be obtained on that pleaded claim—notably,

---

[3]     *See* Second Amended Complaint ¶ 48 (filed Sept. 7, 2010) ("Defendant CCA, the employer of both Defendant Townes and Defendant Wagner, is vicariously liable for torts these two Defendants committed within the scope and course of their duties as a corrections officer and as warden of the Camino Nuevo facility."); *see also* Aplees.' Suppl. App. at 65 (Answer Br.) (evincing Defendants' acknowledgment before the NMSC in the certification proceedings that "Plaintiffs . . . alleged that CCA was vicariously liable for Townes' torts" in the operative complaint).

under an aided-in-agency theory.  Moreover, as we see it, the NMSC's holding regarding vicarious liability is inextricably intertwined with the negligent-supervision comparative-fault issue as to which we *did* seek certification; notably, the NMSC declined to reach the latter issue in light of its holding regarding the vicarious-liability claim.  So, in factoring into our decisional calculus the NMSC's answer to our certified question (which queried the NMSC about the comparative-fault negligent-supervision issue) we think it is proper to consider and ultimately adopt that court's associated vicarious-liability holding and apply it to Defendant CCA.

Furthermore, Defendants had an adequate opportunity to challenge on the merits the aided-in-agency theory of vicarious liability when Plaintiffs asserted it before the NMSC during the certification proceedings, but they did not do so; instead, they elected merely to argue that the theory was not properly before the NMSC.  That Defendants chose not to respond on the merits to Plaintiffs' arguments regarding the aided-in-agency theory—for strategic reasons or otherwise—does not mean that they were unfairly deprived of an opportunity to do so.[4]  Therefore, in our view, Defendants do not have a cogent argument that

---

[4]    In fact, Defendants had special notice that they should respond to all state-law arguments raised in the NMSC because our Certification Order made clear that "Our phrasing of th[e] question [wa]s not intended to limit the New Mexico Supreme Court's scope of inquiry[,]" and explicitly "invite[d]" the NMSC to reformulate the certified question "in any way it [found] helpful." Certification Order at 15.

they would be denied due process or otherwise treated unfairly if we adopt the
NMSC's holding on vicarious liability. *See, e.g.*, *West v. Grand Cty.*, 967 F.2d
362, 367 (10th Cir. 1992) ("The individual entitled to due process protection
needs only to be given notice and an opportunity to respond."); *accord Cleveland
Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The essential
requirements of due process, and all that respondents seek or the Court of
Appeals required, are notice and an opportunity to respond.").

Thus, having properly adopted the NMSC's holding and applied it to
Defendant CCA, we reverse the district court's grant of summary judgment for
Defendants on the vicarious-liability claim, and remand with instructions for the
district court to enter judgment in favor of all Plaintiffs on that claim against
Defendant CCA, and to award them full compensatory damages.

**2**

Because we adopt the NMSC's decision regarding vicarious liability, we
decline to reach the merits of Plaintiffs' negligent-supervision comparative-fault
challenge—which was the issue that we certified to the NMSC. Specifically, *as
to Defendant CCA*, we deem the issue moot. Because Plaintiffs will recover all
compensatory damages against Defendant CCA under the vicarious-liability
claim, and because they cannot recover for the same harm twice under New
Mexico law, *see, e.g.*, *Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 301
P.3d 387, 400 (N.M. 2013); *Hood v. Fulkerson*, 699 P.2d 608, 611 (N.M. 1985),
we agree with the NMSC that the negligent-supervision comparative-fault

challenge is moot as to Defendant CCA.  In other words, because Plaintiffs cannot recover anything, as a matter of law, on their negligent-supervision claim from Defendant CCA, we cannot afford any relief on that claim, and Plaintiffs' comparative-fault challenge with respect to that claim is therefore legally irrelevant—*viz.*, it matters not whether a negligent-supervision recovery from Defendant CCA could be permissibly reduced for comparative fault because there will not be such a recovery for negligent supervision from CCA.

However, importantly, we do not apply the NMSC's aided-in-agency vicarious-liability holding to *Defendant Wagner* because she was not a named defendant in the vicarious-liability claim of the operative complaint.  We acknowledge that because Ms. Wagner was not a named defendant under the vicarious-liability claim, the double-recovery rationale—stemming from Plaintiffs' full relief on that claim—would not seemingly apply to her.  If that were true, then Plaintiffs conceivably would not be precluded, as a matter of law, from recovering relief against Ms. Wagner on their negligent-supervision claim and the viability of a comparative-fault defense relative to such a claim would still be a question for us to resolve.  However, Plaintiffs' supplemental briefing does not evince any intention of continuing to prosecute their negligent-supervision claim against Ms. Wagner, *so long as* they are permitted to receive full relief on their vicarious-liability claim against Defendant CCA.

Specifically, Plaintiffs have indicated that their negligent-supervision claim—and thus the issue of comparative fault—"drops out of the analysis[,]" if

15

they prevail on their vicarious-liability claim against Defendant CCA.  Aplts.'
Suppl. Mem. Br. at 2; *accord id.* at 4, 8.  And, perhaps more to the point, with
their gaze seemingly focused on the recovery of damages on their vicarious-
liability claim from Defendant CCA, Plaintiffs have not specifically sought in
explicit terms relief against Ms. Wagner on their negligent-supervision claim.
Accordingly, at least under the circumstances present here, where the condition
of Plaintiffs' recovery of full relief from Defendant CCA on the vicarious-
liability claim is satisfied, we conclude that Plaintiffs have effectively waived
and abandoned—through the averments of their supplemental briefing or the lack
thereof—any negligent-supervision claim against Ms. Wagner.  *See, e.g.*, *Bronson
v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007); *Tran v. Trs. of State Colls. of
Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004).  Consequently, we have no need to
decide as to Ms. Wagner whether the district court erred in permitting the
comparative-fault defense to be presented to the jury on the negligent-supervision
claim.

  To summarize: we reverse the district court's grant of summary judgment
for Defendants on the vicarious-liability claim, and remand with instructions to
enter judgment for all Plaintiffs on the vicarious-liability claim as to Defendant
CCA.  Due to New Mexico's prohibition on double recovery, and Plaintiffs'
effective waiver of their negligent-supervision claim as to Defendant Wagner, we
need not, and thus do not, resolve any issues regarding the negligent-supervision

claim—notably, the issue of whether a comparative-fault defense to such a claim is viable under the circumstances here.

### C

Turning to the third issue in the case, we reject Plaintiffs' claim that the jury instructions impermissibly limited their Eighth Amendment claim to a single theory of liability. "We review 'a district court's refusal to give a requested [jury] instruction for abuse of discretion[,]' [b]ut we review the jury instructions de novo to determine 'whether, as a whole, they accurately state the governing law.'" *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1251 (10th Cir. 2013) (citation omitted) (quoting *United States v. Crockett*, 435 F.3d 1305, 1314 (10th Cir. 2006)).

At the outset, we hold that Plaintiffs' jury-instructions challenge is fatally infirm because they failed to identify in their opening brief an additional CCA policy or custom that was supported by sufficient evidence to warrant a jury instruction, beyond the policy or custom that was the subject of the district court's instruction—*viz.*, a policy or custom of discouraging the reporting of staff misconduct.[5] Specifically, in order to establish CCA's liability under 42 U.S.C. §

---

[5] Early in the district court litigation, Defendants moved for summary judgment on, *inter alia*, Plaintiffs' Eight Amendment claim on the ground that there was "no evidence that CCA had a policy or custom that was the moving force behind Mr. Townes'[s] conduct." Aplts.' App. at 304 (Defs.' Mot. for Summ. J., filed Sept. 29, 2010). Plaintiffs responded by setting forth several CCA policies that they alleged were constitutionally infirm, one of which was that Defendant CCA had a policy of discouraging "the reporting of staff misconduct." *Id.* at 481. The district court found that Plaintiffs had raised a

1983, Plaintiffs were obliged to point to a policy or custom of CCA "that caused their injury." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."); *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("The County may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees.").[6]

In their opening brief, Plaintiffs insist that the district court erred "[b]y focusing on the search for a single, express policy or policymaking decision by Defendant Wagner"; as a consequence, they reason, it "ignored the combined

---

genuine issue of material fact as to whether Defendant CCA had a policy of discouraging the reporting of staff misconduct, but there was no evidence to support any of Plaintiffs' other theories for § 1983 liability. *See id.* at 500. As a result, at trial, the jury was instructed that Plaintiffs could only succeed on their Eighth Amendment claim if they proved that Defendant "CCA had an official policy or custom of discouraging inmate complaints." *Id.* at 1291 (Instruction No. 13, filed Feb. 15, 2012). During the remainder of their time in district court, Plaintiffs merely asserted general objections to limiting their Eighth Amendment claim to the single theory permitted by the summary-judgment proceeding; they never identified evidence supporting any other theory of § 1983 liability.

[6]     In addressing Plaintiffs' Eighth Amendment § 1983 claim, the district court applied the legal principles of municipal liability established by *Monell* and its progeny to CCA. In other words, for purposes of this claim, the court assessed the scope of CCA's liability just as if it were a unit of local government. Plaintiffs do not object on appeal to the application of *Monell*'s rubric to CCA in the context of this claim, though they do contend in their instructional challenge that the court misapplied that rubric.

effect of the circumstantial evidence showing deliberate ignorance from other angles."  Aplts.' Opening Br. at 55.  In this regard, Plaintiffs stress that "[a] conscious or deliberate choice to disregard the risk of harm can reasonably be inferred from the fact" that Officer Townes engaged in a pattern of tortious conduct that "was viewable on security cameras" or otherwise noticeable.  *Id.* at 54.

Plaintiffs' argument is fundamentally misguided, however, because it conflates their burden to establish that CCA's agents acted pursuant to a policy or custom—such that their conduct may be properly attributed to CCA—with their additional obligation to show that CCA's conduct involved the requisite culpability, that is, deliberate indifference.  *See Brown*, 520 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability . . . ."); *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007) ("When employees take actions specifically authorized by policy or custom, their actions can be fairly said to be the municipality's."); *see also City of Canton v. Harris*, 489 U.S. 378, 392 (1989) ("[W]hile claims such as respondent's—alleging that the city's failure to provide training to municipal employees resulted in the constitutional deprivation she suffered—are cognizable under § 1983, they can only yield liability against a

municipality where that city's failure to train reflects *deliberate indifference* to the constitutional rights of its inhabitants." (emphasis added)); *Barney*, 143 F.3d at 1307 ("The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.  In most instances, notice can be established by proving the existence of a pattern of tortious conduct." (citation omitted)); *cf. Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) ("A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent *training or supervision*." (emphasis added)).

In other words, deliberate indifference is not legally actionable under § 1983 in a vacuum; it must pertain to a substantial risk of unconstitutional effects resulting from municipal conduct—*viz.*, conduct undertaken pursuant to a municipality's policy or custom.  Therefore, it is not enough for Plaintiffs to point to circumstantial proof that establishes that Defendant CCA possessed a generally callous or reckless mindset regarding the conduct of its agents—that is, a mindset rising to the level of deliberate indifference.  They must identify an actionable CCA policy or custom.

In their reply brief, Plaintiffs endeavor to remedy this fatal deficiency by alluding to a second ostensible policy or custom—"a failure to supervise[,]" Aplts.' Reply Br. at 51—but this identification of an additional policy comes too late. *See, e.g.*, *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011); *Wheeler v. Comm'r of Internal Revenue*, 521 F.3d 1289, 1291 (10th Cir. 2008). In any event, even if we were inclined to assess the viability of Plaintiffs' instructional challenge in light of this late-blooming policy or custom, they would not prevail. Despite Plaintiffs' vigorous efforts to demonstrate otherwise, they have failed to present sufficient evidence that would have warranted a failure-to-supervise instruction. More specifically, they have failed to present adequate evidence that Defendant CCA was on "actual or constructive notice" that its failure to supervise was "substantially certain to result in a constitutional violation, and it consciously or deliberately [chose] to disregard the risk of harm." *Barney*, 143 F.3d at 1307; *see Brown*, 520 U.S. at 397 ("As our decision in *Canton* makes clear, 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."); *see also City of Canton*, 489 U.S. at 396 (Brennan, J., concurring) ("Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied.").

21

For example, Plaintiffs have failed to adequately demonstrate that Defendants were put on actual or constructive notice by a pattern of officer sexual assaults at Camino *before* Officer Townes assaulted them. *See Brown*, 520 U.S. at 411 ("A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a *particular* constitutional or statutory right will follow the decision." (emphasis added)); *Barney*, 143 F.3d at 1308 ("[P]laintiffs' failure-to-train claim fails because the record contains no evidence tending to show that the County acted with deliberate indifference. The Sheriff and the Commissioners testified in their depositions they were unaware of any previous incidents involving the sexual assault of an inmate by a Box Elder County jailer or of any complaints about the treatment of women inmates at the jail."); *see also City of Canton*, 489 U.S. at 385 ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is *a direct causal link* between a municipal policy or custom *and* the alleged constitutional deprivation. (emphases added)).

In other words, in our view, Plaintiffs' evidence did not present a triable issue regarding whether Defendants were deliberately indifferent to a substantial risk that their purported failure-to-supervise policy would cause an Eighth Amendment violation. Consequently, Plaintiffs have failed to show that the evidence adduced at trial could have supported Eighth Amendment liability for a policy *other than* discouraging inmate complaints. Accordingly, the district court

did not err in charging the jury only regarding the policy of discouraging inmate complaints.

**D**

Next, we conclude that the district court should revisit the fourth issue remaining in the case, regarding Federal Rule of Civil Procedure 54(d) costs. Both parties acknowledge that if we adopt the NMSC's ruling regarding vicarious liability (as we have), the cost equation will be dramatically altered, not the least of which because Plaintiff Carrera will now be a prevailing party as to the vicarious-liability claim, and because there will be no reduction for comparative fault. So, we vacate and remand for the district court to address this issue in the first instance.

**E**

On the fifth issue, for much the same reason that we vacate and remand as to costs, we do so as to attorneys' fees. Adopting the NMSC's ruling scrambles the decisional chess board, and we deem it prudent to allow the district court to address in the first instance whether to allow attorneys' fees. Moreover, we decline Plaintiffs' request for appellate attorneys' fees, which they advance in skeletal fashion—without citation to pertinent authorities or argument—only in their opening brief and in their supplemental brief. *Cf. Zinna v. Congrove*, 755 F.3d 1177, 1183 (10th Cir. 2014) ("Because there is no argument, authority, or record citations . . . the appellate fee issue is not sufficiently raised on appeal.").

**F**

Finally, in their post-certification briefing, Plaintiffs seek punitive damages based on their newly-obtained victory on the vicarious-liability claim.  Because we adopt the NMSC's view as to vicarious liability, we remand for the district court to address Plaintiffs' punitive-damages claim in the first instance.  More specifically, we leave to the district court to decide in the first instance whether Plaintiffs should be allowed to pursue such punitive damages and, if so, what procedures should govern the resolution of this damages issue.  We do this recognizing that the vicarious-liability claim for which Plaintiffs seek punitive damages never went to the jury, and that, prior to their post-certification supplemental briefing, Plaintiffs did not argue on appeal for punitive damages relative to this claim.[7]

**III**

In sum, for the foregoing reasons, we **affirm** in part, **vacate** in part, **reverse** in part, and **remand** for further proceedings consistent with this order

---

[7]      Plaintiffs initially sought punitive damages for their vicarious-liability claim in the district court, but after that court dismissed their vicarious-liability claim on summary judgment, they did not raise their request for punitive damages on that claim in their pre-certification appellate briefing.  They argue that the certified answer put their request for punitive damages for vicarious liability back into play.  We agree, but at this time only to the extent that Plaintiffs should have an opportunity to argue for punitive damages before the district court; we do not opine on the merits of those arguments.

and judgment.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

September 12, 2016

Chris Wolpert
Chief Deputy Clerk

Mr. Daniel Patrick Struck
Mr. Nicholas D. Acedo
Ms. Christina Retts
Struck, Wieneke & Love, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226

Mr. Paul J. Kennedy
Mr. Arne Leonard
Paul Kennedy & Associates
201 12th Street N.W.
Albuquerque, NM 87102

Mr. Aaron C. Viets
Rodey Dickason Sloan Akin & Robb
P.O. Box 1888
Albuquerque, NM 87103-0000

RE:     12-2094, 12-2101, 12-2168, 12-2210, Spurlock, et al v. Townes, et al
        Dist/Ag docket: 1:09-CV-00786-WJ-SMV

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in these matters. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 8 paper copies with the clerk, in addition to satisfying

all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court


cc:     Mary Y.C. Han
        Michael Steven Jahner

EAS/kf